230 A.2d 841.

## EDMUND I. WALDMAN *vs.* SHIPYARD MARINA, INC.

JUNE 16, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J. This is an action of trespass on the case for negligence brought to recover for damage to a motorboat resulting from a fire that occurred while the boat was berthed at the defendant's marina in the city of Providence. The case was tried to a justice of the superior court sitting without a jury, and judgment entered for the plaintiff in the amount of $6,266.50. The defendant in this court is prosecuting its appeal from that judgment.

The record discloses that on July 22, 1961, a motorboat owned by Robert P. Muehlberg, not a party to this action, was berthed at defendant's marina. On that day it was taken in charge for fueling by defendant's dockmaster, William Hurdis, while lying at a fueling pier. After the dockmaster had completed the fueling operation and as he prepared to move the Muehlberg boat to another berth, he activated the starter. However, the engine failed to respond, and a grinding noise resulted, followed by an explosion, which caused the fire.

The dockmaster, after attempting unsuccessfully to extinguish the fire, boarded another boat, owned by defend-

ant, and moved it from the proximity of the burning vessel. In the meantime the fire spread to other portions of the marina, including a motorboat owned by plaintiff lying at a nearby berth. It is for substantial damage to this boat that plaintiff brought this action.

We would note, first, that defendant maintains that error inhered in several evidentiary rulings of the trial justice, particularly his admission into evidence of the testimony of Anthony Ferreira, a marine surveyor. This testimony was concerned with a conversation that Ferreira had with the dockmaster Hurdis after the fire. At the time of the trial Hurdis had died. Ferreira testified that Hurdis had admitted taking no precautions against fire in attempting to start the engine after the fueling operation. Another of these contentions is directed to the trial court's allowing Ferreira to testify as an expert on the subject matter of the proper methods for starting boat engines after a fueling operation has been completed.

The record clearly discloses that the trial justice relied substantially upon this evidence in reaching his conclusion that the dockmaster Hurdis had neglected to take any precautions against the ignition or explosion of fumes or gasoline after the fueling and before attempting to start the engine. He clearly held that these omissions of the dockmaster amounted to negligence in law. It is our opinion that no error inhered in either ruling.

Ferreira was permitted to testify as to his conversation with the dockmaster on the ground that the subject matter thereof was a decedent's declaration within the provisions of G. L. 1956, §9-19-11. This statute provides that a declaration of a deceased person shall not be inadmissible as hearsay when the court finds that it was made in good faith before the commencement of the action and upon the personal knowledge of the declarant. The transcript reveals that the court found compliance with the statutory conditions controlling the admission of such hearsay testimony.

There is, in our opinion, no merit in defendant's contention that the court committed reversible error in allowing this testimony to be given.

It has been held that the statute in question was intended to give a trial court a wide discretion in allowing testimony to be adduced thereunder and that for the purpose of promoting the ends of justice the statute should be liberally applied. *Rhode Island Hospital Trust Co.* v. *Sherman,* 56 R. I. 355, 185 A. 601. The testimony as to what the dockmaster said is clearly material and relevant, and had he been alive at the time of the trial, it would have been admissible. In such circumstances we cannot say that the trial justice abused the discretion vested in him by the statute in permitting Ferreira to testify as he did.

The defendant's argument that the admission of this testimony without a foundation being previously laid therefor constitutes reversible error is without merit. The defendant relies on *De Fusco* v. *Laudati,* 64 R. I. 68, 10 A.2d 346, in arguing that such testimony is inadmissible unless a prior foundation has been laid. The language concerning the laying of a prior foundation means simply that there be a previous establishment by the witness that the evidence sought to be adduced will be presented in compliance with the statutory conditions controlling its admission. It is to be noted, however, that unlike the instant case, the cause in *De Fusco* v. *Laudati* was tried before a jury. In jury trials it is not unreasonable to require a more formal compliance with the provisions of the statute, including a prior establishment of such compliance, in order to preclude the possibility that inadmissible evidence would get to the jury and result in prejudice even though later stricken. As we noted, in the instant case the evidence was being heard by the court as trier of the fact.

We cannot agree that the reference to a prior foundation made in *De Fusco* v. *Laudati* by the court was intended to require the establishment of a formal procedure for deter-

mining the admissibility of such hearsay testimony in all cases. In our opinion, such an interpretation would effectively limit the use of the statute and defeat the legislative purpose that hearsay evidence of this character be admitted to promote the ends of justice. We are then of the opinion that the trial justice, in permitting Ferreira to testify as to the dockmaster's conversation, was without error.

Nor, in our opinion, did any error inhere in the action of the trial justice in permitting Ferreira to testify as an expert witness. His testimony in that capacity was concerned with the proceedings properly to be followed before attempting to start the engine of a small boat after a fueling operation has been completed. It is well settled that it is within the sound judicial discretion of the trial justice to pass upon the qualification of expert witnesses. *Rossilli* v. *Iacovelli,* 88 R. I. 456, 149 A.2d 709. In the circumstances surrounding the qualification of Ferreira, we are unable to say that the trial justice was clearly wrong or that he abused his discretion in so acting.

Since we conclude that the testimony of Ferreira both as to the dockmaster's failure to take precautions and his expert opinion as to what constitutes proper precautions was properly admitted into evidence, the controlling issue becomes that raised by defendant's contention that the record still remains barren of any legally competent evidence tending to prove that the negligence of defendant was a direct and proximate cause of the fire. In support of this contention, defendant urges that in finding causation the trial justice drew an inference from the established evidentiary facts and from that inference again inferred the causative relationship between defendant's negligence and the fire. It argues that this resting of a finding of ultimate fact on an inference which in turn rests upon another inference violates the long-standing rule in this state that such pyramiding of inferences is prohibited. We agree with defendant's argument that there is no direct evidence in the record

that gasoline, either in liquid form or fumes, collected in the bilges or compartments of this boat. It is clear, however, that the trial justice so inferred and that he then went on to infer that such liquid or gaseous fuel was ignited by the activation of the starter, thereby causing the fire.

A trier of fact may draw reasonable inference from established evidentiary facts that become facts upon which reliance may be placed in the fact-finding process. *Fox* v. *Personnel Appeal Board,* 99 R. I. 566, 209 A.2d 447; *Labbe* v. *Hill Brothers, Inc.,* 97 R. I. 269, 197 A.2d 305. In *Fox* we said: "It is well settled that a reasonable inference drawn from an established fact is in itself a fact upon which reliance may be placed by one exercising a fact-finding power." However, this court, when confronted with situations involving the pyramiding of inferences, so called, has usually followed what appears to be the generally accepted rule on the subject, that is, that such inference drawn from another inference is rejected as being without probative force. Obviously the reason for the rule is to protect litigants against verdicts predicated upon speculation or remote possibility. In *Industrial National Bank* v. *Dyer,* 96 R. I. 39, 45, 188 A.2d 909, 913, we said: "Conceding that a reasonable inference drawn from an established fact is itself an inferential fact which may be of probative force, it does not follow that such an inferential fact may then serve as the basis for a further inference that would likewise possess some probative force. A conclusion reached by drawing inferences from inferences is never considered as being probative of an ultimate fact under any proper concept of judicial proof."

This court has invariably followed the basic rule. However, it does appear that in *Swartz* v. *Edwards Motor Car Co.,* 49 R. I. 18, 139 A. 466, we approved the view stated by Professor Wigmore to the effect that there is no such rule and can be no such rule, who said: "If there were, hardly a single trial could be adequately prosecuted." See 1 Wigmore on Evidence, §41, p. 435. It appears, however,

that *Swartz* stands alone and that this court has consistently rejected as being without evidentiary value an inference drawn from another inference. We are cognizant, however, of a growing tendency among the jurisdictions to make exceptions in the strict application of the rule. While obviously attempting to preclude the resting of verdicts upon speculation or remote possibilities, these courts have recognized the necessity in some circumstances for recognizing the probative value that may attach to an inference resting upon an inference.

Many jurisdictions do not fully reject the rule because of its effectiveness in excluding verdicts based on speculation and remote possibilities but hold that the rule should be applied only where there is an attempt to rest an inference upon an inference that is too remote or too speculative. *Vaccarezza* v. *Sanguinetti*, 71 Cal. App. 2d 687, 163 P.2d 470. This same view has been adopted by the Missouri court in *Braun* v. *Roux Distributing Co.*, Mo., 312 S.W.2d 758. That court said: "* * * it is doubtful that there is any such thing as a rule of either evidence or practice against piling inferences upon inference * * *; if so perhaps it is but a convenient way of guarding against what the court regards as 'attenuated reasoning' on the part of the jury, or evidence thought to be too remote or uncertain or lacking in probative force." It is our opinion that this view is contained within our own rule of total rejection of such inference, it clearly being applicable where the inference is drawn from a prior inference that is speculative or only remotely possible.

Other jurisdictions have adopted a readily applicable rule, and that is that an inference may rest upon a prior inference that has been established to the exclusion of all other reasonable inferences. In *New York Life Ins. Co.* v. *McNeely*, 52 Ariz. 181, 196, 79 P.2d 948, 955, the court stated: "We think that this is the true meaning of the 'inference upon inference' rule in civil cases as borne out by a careful

analysis of the majority of cases in which it has been applied, and that the courts do not mean that under no circumstances may an inference be drawn from an inference, but rather that the prior inferences must be established to the exclusion of any other reasonable theory rather than merely by a probability, in order that the last inference of the *probability* of the ultimate fact may be based thereon. This rule is not based on an application of the exact rules of logic, but upon the pragmatic principle that a certain *quantum* of proof is arbitrarily required when the courts are asked to take away life, liberty or property." This view has also been accepted in Florida. In *Voelker* v. *Combined Ins. Co. of America, Fla.,* 73 So.2d 403, 407, the court stated: "We do not believe that the 'inference upon inference' rule, whose common acceptance has been justly and appropriately criticized by Professor Wigmore * * * should be construed to mean that under no conceivable circumstances may one inference be deduced from another. We think, however, that such method of establishing an ultimate fact should not ordinarily be indulged unless the first inference meets a test which may be analogized to the criminal rule concerning circumstantial evidence, i.e., in the ordinary case, only if the prior or basic inference is established to the exclusion of any other reasonable theory should another be drawn from it."

It is our opinion that the long-standing rule in this state may well be modified to conform to the view expressed in the Arizona and Florida cases. Under that rule the integrity of the fact-finding process is protected, it being clear that when an inference is such as to exclude any other reasonable inference being drawn from the basic fact, such an inference partakes of the nature of a fact to which probative force must be attributed. Obviously a court should never draw an inference from an inference that is itself speculative or of remote possibility. However, in cases that do not reach this extreme, justice may be promoted by the

acceptance of an inference as having probative force which rests on another inference where that inference clearly excludes the drawing from the same fact of another reasonable inference. But an inference resting on an inference drawn from established facts must be rejected as being without probative force where the facts from which it is drawn are susceptible of another reasonable inference.

We undertake then to apply this rule to the inferential processes of the trial justice in the instant case. The facts established by the direct evidence adduced in this case are simply that the Muehlberg boat was fueled by the dockmaster; that the dockmaster, without taking any prior precautions to ventilate the vessel, attempted to start the engine; and that a fire occurred. To establish a causal connection between the omissions of the dockmaster to take precautions after fueling and the fire, the trial justice inferred that gasoline fumes had collected either in the engine room or in the bilges of the Muehlberg boat. From this inferential fact he then inferred that these fumes were ignited when the dockmaster attempted to start the engine.

It is clear from our prior discussion that the second inference can be accepted as being of probative force only if the inference upon which it rests, that is, that the fumes accumulated in the engine room or bilges, necessarily excludes the drawing of any other reasonable inference from the fact that the fueling operation had been carried out. We are unable to agree that such is the only reasonable inference that can be drawn from the carrying out of the fueling operation. That degree of probability necessary to exclude other reasonable or contrary inferences does not inhere in the basic inference, in our opinion.

The burden was on the plaintiff in the instant case to prove that the fire resulted from the negligence of the dockmaster, that is, his failure to take the customary precautions to ventilate the craft after fueling. The defendant was under no obligation to establish the cause of the fire, and

clearly the plaintiff could not do so through any direct testimony. It may well be that the inference that fumes accumulated as a result of the fueling operation would possess such a degree of probability as to exclude other reasonable inferences had it been established that there was some defect in the fuel tank or gasoline line or some spillage during the fueling operation. But absent some additional evidentiary facts, we are constrained to conclude that the fact of the fueling operation was open to reasonable inferences other than an accumulation of gasoline fumes.

The appeal of the defendant is affirmed, and the judgment appealed from is reversed.

Motion for leave to reargue denied.

*Weller & Wilkins, Joseph C. Johnston, Jr., S. Everett Wilkins,* for plaintiff.

*Higgins, Cavanagh & Cooney, Joseph V. Cavanagh, Harold E. Adams, Jr.,* for defendant.