Gary DOYLE
v.
STATE.

No. 80–295–C.A.

Supreme Court of Rhode Island.

May 27, 1981.

Mann & Roney, Robert B. Mann, Providence, for petitioner.

Dennis J. Roberts II, Atty. Gen., Alfred French Goldstein, Sp. Asst. Atty. Gen., for respondent.

## OPINION

KELLEHER, Justice.

This is an appeal from an order of the Superior Court dismissing a petition for postconviction relief. General Laws 1956 (1969 Reenactment) § 10–9.1–1. The petitioner, Gary Doyle (Doyle), alleges that the trial justice erred by finding that Doyle voluntarily entered a plea of guilty to a charge of second-degree murder. For the reasons that follow, we affirm the decision of the trial justice.

On March 14, 1975, Doyle was charged with a two-count indictment with committing an assault with a dangerous weapon and murdering a four-year-old child. Trial commenced on September 24, 1975, and came to an end on October 3, 1975, when Doyle entered a plea of guilty to a charge of murder in the second degree and the prosecution agreed to a dismissal of the assault count. He was sentenced to serve twenty-five years at the Adult Correctional Institutions. A motion to reduce sentence was heard and denied on February 17, 1976.

On February 23, 1979, Doyle filed a petition for postconviction relief, alleging that at the time he changed his plea, he was under the influence of marijuana, and as a result, he was unable to enter a "competent, knowing voluntary and intelligent" guilty plea. On May 4, 1979, the petition was heard before the justice who had presided over the aborted trial and who had accepted the guilty plea. Although the trial justice had been presented with affidavits suggesting that Doyle had smoked marijuana prior to the change of plea, the trial justice only allowed testimony from the public defender who had represented Doyle during the trial. That testimony, together with his own recollection of the events of October 3, 1975, convinced the trial justice that no genuine issue of material fact existed. He then granted the state's motion for summary judgment.

On appeal, we ruled that the grant was erroneous because the summary-judgment proceedings had deteriorated to a point at which the trial justice, instead of determining whether there was an issue of fact, engaged in factfinding after weighing the evidence that was before him. Consequently, we remanded the case for an evidentiary hearing on the voluntariness of Doyle's change of plea. See Doyle v. State, R.I., 411 A.2d 907 (1980).

The evidentiary hearing on remand consisted of testimony by Doyle and his witnesses as well as testimony from the attorneys present at the original trial and representatives of the Rhode Island State Marshal's office.[1] Doyle testified that during lunch he had smoked a "couple" of marijuana cigarettes ("joints") with another prisoner in the cellblock area of the Providence County Courthouse. He stated that after smoking several joints, he felt "lightheaded" and "confused" and it was this condition, rather than any rational decision, which caused him to change his plea to guilty that afternoon. On cross-examination, he acknowledged that he knew he was pleading to a deal offered by the state[2] and that he had decided to accept this deal after a cellblock conference with his attorney which took place during a recess.

Sidney Clark, the inmate who allegedly had shared the joints with Doyle, also testified. Clark was unable to recall how many joints had been smoked during this midday revelry, but he stated he believed the supply to have been exhausted in five minutes. However, Clark did remember that Doyle became "high" and didn't seem to be in his "right mind" as a result of his indulgence.[3] Doyle's mother testified that she had spoken to her son in the cellblock during the recess and that she remembered his eyes were "glazed" and "bloodshot," although her initial impression was that this condition was attributable to lack of sleep.

The public defender who represented Doyle during the trial, Paul E. Kelley, testified that during the noon recess on October 3, 1975, he went to the cellblock to speak with his client about the trial and the possibility of changing the plea. Kelley reported that he told Doyle the trial was not going well, from the defendant's point of view, and that, in his opinion, the best Doyle could hope for was a conviction for manslaughter, but that a conviction of first-degree murder was the more likely result if the case went to the jury. Kelley added that he believed Doyle was aware of what was happening and that at the time of the change of plea that afternoon, Doyle did not exhibit any signs of intoxication. Kelley also noted that he spoke with Doyle several times after October 3 and that at no time did Doyle indicate he had been under the influence of any drugs at the time he changed his plea.

The assistant attorney general who prosecuted Doyle, Walter Stone, testified concerning his recollection of the events surrounding the change of plea. Stone had observed Doyle during the thirty minutes that had elapsed while the change in plea was being effectuated. According to Stone, at no time during that period did Doyle exhibit any signs of intoxication. He further indicated that he had informed Kelley on October 3 that the state intended to request that the jury be instructed on the elements of first-degree murder but that the state would allow Doyle to plead guilty to second-degree murder if he accepted a sentence of thirty-five years with the imposition of ten of those years suspended.

The final witness was a state marshal who had been assigned to the cellblock area during the period in question. He stated that he was familiar with the smell of marijuana and that "on more than one occasion" he had smelled marijuana emanating from the cellblock but that he had no such recollection of smelling it on October 3. He also stated that on October 3, 1975, Doyle did not share a cell with Clark.

Doyle's appeal involves nothing more than a question of fact regarding whether or not he was aware of what was happening at the time he entered his guilty plea. Under our rule, the trial justice's findings of fact are entitled to great weight

---

1. The trial justice who conducted the evidentiary hearing was not the same justice who had presided over the 1975 trial.

2. Testimony adduced at the hearing revealed that the state was willing to recommend a sentence of thirty-five years, with ten suspended, in exchange for a plea of guilty to second-degree murder.

3. Doyle also submitted an affidavit of an inmate who was unavailable for the hearing, which document stated that Doyle had told him "he had been smoking marijuana" at the courthouse and that Doyle appeared glassy-eyed upon his return from court on the day in question.

and will not be disturbed absent a showing that the trier of fact has misconceived or overlooked material evidence or was otherwise clearly wrong. *State v. Amado*, R.I., 424 A.2d 1057 (1981); *State v. Duggan*, R.I., 414 A.2d 788 (1980); *State v. Aurgemma*, 116 R.I. 425, 358 A.2d 46 (1976). Doyle's appellate argument essentially rests on the proposition that the trial justice should have believed his witnesses rather than those presented by the state. Such an argument is appropriate in a trial court but not in this court. *State v. Chatell*, R.I., 401 A.2d 436 (1979). In essence, the trial justice ruled that when Doyle withdrew his not-guilty plea, he was not "high," but rather both his feet were figuratively and literally firmly planted on the courtroom floor. The record amply supports this conclusion.

The petitioner's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to Superior Court for further proceedings in accordance with this opinion.

SHEA, J., did not participate.