## In re DEREK.

### No. 81–118–Appeal.

Supreme Court of Rhode Island.

July 23, 1982.

Dennis J. Roberts II, Atty. Gen., Joel S. Chase, Sp. Asst. Atty. Gen., for petitioner-appellee.

William F. Reilly, Public Defender, Barbara Hurst, Chief Appellate Atty., Providence, for respondent-appellant.

## OPINION

WEISBERGER, Justice.

This is an appeal from an adjudication of delinquency based on a finding that the juvenile-respondent had committed an act that would have constituted larceny if committed by an adult. At issue are the sufficiency of the evidence and certain rulings of the Family Court justice regarding his knowledge of an earlier court appearance of the respondent. We agree that the state did not satisfy its burden of proof, and therefore, we reverse the adjudication of delinquency.

On September 8, 1980, the bookkeeper of S. Adelson Company (Adelson) in Newport discovered that cash, checks, and bank charge-card receipts totaling some $6,000 were missing from her office. There is no question that the money, the checks, and the receipts were stolen. The state contended that Derek was the person who committed the offense.

The greater part of the evidence at trial concerned Derek's whereabouts during the morning of September 8, 1980. The state attempted to place Derek at the scene of the larceny sometime between his two September 8 court appearances. The respondent's sole witness, however, testified that Derek went to court only once that day and was at home at the time the larceny allegedly occurred. In support of its allegations, the state introduced the following evidence.

Robert Greichen (Greichen) a sales clerk for Adelson, testified that at about 10:30 or 10:45 in the morning of September 8, 1980, he observed Derek and another young man in the front hallway of the store. Greichen recognized Derek, whom he knew, by name. He told Derek and the other young man that he would be with them in a few minutes. When Greichen returned about five minutes later, both young men had gone.

Catherine Sullivan, the bookkeeper for Adelson, testified that sometime before 10:30 a. m. on September 8, 1980, she prepared a deposit slip and envelope containing the receipts of the previous weekend. At about 10:30, she left the deposit envelope in her second-floor office and went down to the first floor where she saw two young men in the hallway. She said that she went into the store for about fifteen minutes then returned to her office. Sometime later she discovered that the cash, checks, and receipts were missing from the deposit envelope. Although she could not identify the young men she had seen in the hallway, she did recall that one had been wearing a blue T-shirt.

Officer Roger Roberts of the Newport police department testified that he had seen Derek at the Newport County Courthouse the morning of September 8, 1980. The officer was at the courthouse from as early as 9:30 a. m. but did not specify what time he saw Derek. Referring to his report, officer Roberts testified that Derek had been wearing "a dark blue almost purplish shirt [and] dark colored pants" that morning. The officer stated that Derek's apparel was consistent with the description of the clothing worn by one of the suspected perpetrators of the Adelson larceny as reported in a later police broadcast. Officer Roberts further testified that he saw Derek after the noon recess back in court wearing a lighter-colored shirt.

Finally, the state offered the testimony of Brian Pelletier. Pelletier stated that on the morning of September 8, 1980, while he was in the vicinity of the courthouse, he observed two young men having a conversation. The larger of the two produced "a rather large sum of money, and * * * peeled off an amount of money and gave it to the other male * * *." Pelletier did not see the face of either young man but described the larger of the two as wearing "a blue shirt and dark trousers * * *."

Derek's mother, Royann Cockburn, testified on behalf of her son. She stated that Derek had been at home at 10 a. m. on September 8, 1980, that she went to the courthouse alone at about 10:15, that she informed Derek's guardian ad litem that Derek refused to go to court, and that she went back home to get him. Mrs. Cockburn claimed that Derek was still at home at 10:30 when she returned. She then forced him to go back to the courthouse with her. On their way to court at about 10:40, Mrs. Cockburn testified that she and Derek met Greichen and another man. Mrs. Cockburn stated that she and Derek were in the courthouse until the lunchtime recess at "about one, two o'clock."

The state recalled Greichen to the stand. He admitted having seen Derek with his mother on September 8 but stated that they had been on their way from the courthouse. Greichen explained that when he met Derek and his mother he did not tell them he suspected that Derek had committed the

larceny because Derek was then wearing a shirt different in color than the one he wore in the morning. Greichen testified that he became positive that Derek was the person he saw in the lobby when, for a third time on September 8, he saw the respondent in the courthouse again wearing "the same color shirt he had on that morning."

During the course of the trial it became apparent that the trial justice was also the judge who had attended to the juvenile calendar on September 8, 1980. Counsel for respondent requested that the trial justice recuse himself because of his independent knowledge of the factual issue of Derek's whereabouts on the morning of September 8. The trial judge declined to disqualify himself, adding that "there is no other Judge sitting in this county and * * * jeopardy [has] already attached." In closing, counsel argued that the state had failed to prove beyond a reasonable doubt that Derek was the person who had committed the larceny.

In his decision the trial judge found that the two young men seen by the bookkeeper and Greichen in the hallway had committed the larceny because "they were the only ones that had access." The trial judge also believed Greichen's identification of Derek and his explanation of why he had not immediately identified Derek by name. The trial judge did not believe Mrs. Cockburn's testimony that Derek had not been in court early in the morning of September 8 because "the Court has taken judicial notice of the record on Derek that his case was down for trial * * * and * * * was dismissed that morning." The court found that Mrs. Cockburn and Derek "did face the Court earlier that morning and * * * the larceny from Adelson's was after that." In response to a further objection to the use of his independent recollection, the trial judge stated that his finding was based on the record that indicated that a charge against Derek had been dismissed on September 8. The trial judge found Derek guilty as charged beyond a reasonable doubt and adjudged him to be a delinquent.

The respondent raises two issues on appeal. He alleges first that he was denied his constitutional right of confrontation when the trial judge refused to disqualify himself and when he relied on his personal recollection. We need not reach this issue, however, as we agree with respondent's second argument that the state failed to prove its case beyond a reasonable doubt.

■ In a criminal case the state must prove each element of the offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970); *State v. Robalewski*, R.I. 418 A.2d 817, 820 (1980); *In re Susan*, R.I. 411 A.2d 296, 298 (1980). The state must also show beyond a reasonable doubt that the accused was the perpetrator of the offense. *State v. Jacobs*, 21 R.I. 259, 261, 43 A. 31, 32 (1899). When charged with conduct equivalent to a criminal offense, juveniles are entitled to the proof-beyond-a-reasonable doubt standard accorded to adults. *In re Winship*, 397 U.S. at 368, 90 S.Ct. at 1075, 25 L.Ed.2d at 377–78; *In re Susan*, 411 A.2d at 298–99; *In re Pereira*, 111 R.I. 712, 714, 306 A.2d 821, 823 (1973). Applying this standard, the trial judge in the instant case found that Derek was guilty beyond a reasonable doubt of committing the larceny on which the adjudication of delinquency was based. There is no dispute that a larceny was committed. The defendant maintains, however, that the evidence was insufficient to prove beyond a reasonable doubt that he was the person who committed the offense.

We accord great weight to the factual findings of a trial judge sitting without a jury. *Doyle v. State*, R.I. 430 A.2d 416, 417–18 (1981); *State v. Halstead*, R.I. 414 A.2d 1138, 1151 (1980). Unless a factual finding is clearly wrong or material evidence was misconceived or overlooked, we shall not disturb a trial judge's finding of fact. *Doyle v. State*, 430 A.2d at 417–18; *State v. Halstead*, 414 A.2d at 1151. A finding of fact is "clearly erroneous" when the totality of the evidence leaves the reviewing court with a definite and firm conviction that mistake has occurred. *State v. Riendeau*, R.I. 448 A.2d 735, 737 (1982).

The evidence presented by the state to establish that Derek committed the larceny consisted of (1) the testimony that two young men had been seen at Adelson between 10:30 and 10:45 the morning of the larceny, (2) the identification of Derek as one of those young men, (3) the testimony that the money, checks, and receipts were discovered missing sometime after 10:15 a.m., and (4) the testimony that a young man answering Derek's description had been seen with "a rather large sum of money" the morning of the larceny. The personal recollection of the Family Court justice that Derek had been in court early the morning of September 8 does not support the proposition that he committed the larceny. Assuming without deciding that this recollection was not erroneously considered, we feel its primary value would be to impeach the credibility of Derek's alibi witness. At best its probative value regarding Derek's whereabouts would be its tendency to show that Derek was in court sometime in the "early" morning of September 8.

A trier of fact may draw reasonable inferences from the facts presented. *In re Pereira*, 111 R.I. 712, 715, 306 A.2d 821, 823 (1973). The fact that Derek was in the hallway wearing a blue shirt permits the inference that he was one of the young men seen by the bookkeeper. It is unreasonable, however, to infer from his being in the hallway of a store open to the public that Derek committed the larceny. One may also infer that Derek was the young man Pelletier saw with "a rather large sum of money." It is unreasonable, however, to infer from the possession of the money that Derek committed the larceny.

■ If an inference is the only reasonable one to be drawn from the underlying facts, then a secondary inference may be drawn from the primary inference. *Carnevale v. Smith*, R.I. 404 A.2d 836, 840–41 (1979); *Conlin v. Greyhound Lines, Inc.*, R.I. 384 A.2d 1057, 1059–60 (1978); *Waldman v. Shipyard Marina, Inc.*, 102 R.I. 366, 373–74, 230 A.2d 841, 845 (1967). *See generally* 1

Wigmore, *Evidence* § 41 at 434–41 (3d ed. 1940). In *Waldman* we explained that "an inference resting on an inference drawn from established facts must be rejected as being without probative force where the facts from which it is drawn are susceptible of another reasonable inference." 102 R.I. at 374, 230 A.2d at 845. The inference that Derek was the person seen by the bookkeeper does not inevitably follow from Greichen's testimony that Derek was in the hallway wearing a blue shirt. Likewise, the inference that Derek was the person seen with "a rather large sum of money" does not inevitably follow from Pelletier's testimony that a young man wearing a blue shirt was seen with "a rather large sum of money." Neither one of these inferences is exclusive. Moreover, the testimony concerning "a rather large sum of money" is of such an indefinite and inconclusive nature as to make it impossible to conclude that the sum of money vaguely observed could be equated with the unspecified amount of cash stolen from Adelson. No further inferences from either of these primary inferences are, therefore, permissible.

■ We reaffirm our holding that a conviction in a criminal case may rest entirely upon circumstantial evidence. However, we also reaffirm that the totality of such circumstantial evidence must constitute proof beyond a reasonable doubt. *State v. Proulx*, R.I. 419 A.2d 835, 841 (1980); *State v. Roddy*, R.I. 401 A.2d 23, 35 (1979). To conclude that the person who committed the larceny was the person seen with the sum of money and the person seen by the bookkeeper is to speculate. Proof based on conjecture and speculation does not support a criminal conviction. *State v. Distante*, 118 R.I. 532, 539, 375 A.2d 212, 216 (1977); *State v. Fortes*, 110 R.I. 406, 409, 293 A.2d 506, 508 (1972).

■ The state's evidence and the reasonable inferences to be drawn therefrom merely establish that Derek was at the store the morning the money, receipts, and checks were taken and that he was later seen in the area with "a rather large sum of money." These reasonable inferences may

be interrelated only by impermissibly inferring or speculating that Derek committed the larceny. Certainly the evidence raises a suspicion that Derek may have taken the contents of the manilla deposit envelope. Our review of the evidence, however, leaves us with a definite and firm conviction that the determination that Derek was guilty beyond a reasonable doubt was erroneous. We find, therefore, that the state failed to prove beyond a reasonable doubt that Derek is the person who committed the larceny.

For the reasons stated, the respondent's appeal is sustained, the adjudication of delinquency is reversed, and the case is remanded to the Family Court.