STATE

v.

Patrick ALEXANDER.

No. 82–328–Appeal.

Supreme Court of Rhode Island.

Feb. 2, 1984.

Dennis J. Roberts II, Atty. Gen., James P. Renaldo, Asst. Atty. Gen., for plaintiff.

John F. Cicilline, Edward J. Romano, Blossom M. Segaloff (on brief), Providence, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

The defendant, Patrick Alexander, was indicted by a grand jury on August 3, 1979. The indictment charged him with delivering a controlled substance in violation of G.L. 1956 (1968 Reenactment) § 21–28–4.-01(A)(2)(a). The case was tried before a justice of the Superior Court sitting with a jury, which returned a verdict of guilty against the defendant. His motion for a new trial was denied, and he is now before us on appeal.

The defendant was initially indicted by a grand jury for this same offense in November of 1977. However, as a result of our ruling in State v. Jenison, R.I., 405 A.2d 3 (1979), the charge was dismissed on August

1, 1979, and immediately thereafter, defendant was reindicted.

In November 1979 defendant was granted a motion to suppress certain evidence, from which motion the state appealed. We affirmed the trial justice's grant of the motion in *State v. Alexander,* R.I., 433 A.2d 965 (1981).[1] The case proceeded to trial in June of 1982 after the denial of defendant's speedy-trial motions.[2]

The record discloses that on August 14, 1977, several members of the Warwick Police Department were conducting a surveillance operation at the Carlton House Motor Inn. Sergeant James Godbout testified that between 2:15 and 2:30 p.m., he saw defendant leave room 140 carrying a rolled-up brown paper bag along his right side. He stated that defendant, walking slowly and looking over his shoulders and from left to right, proceeded directly to room 249 where he knocked on the door and was admitted. Sergeant Mackey Ernest Carnahan testified that at approximately the same time, he saw an individual later identified as James Bennett, park his car on the service road. He stated that Bennett left a female companion in the car and proceeded toward the building. Although he did not see Bennett carrying anything from where he stood, Carnahan admitted that had Bennett been carrying a folded bag under his clothing, it would not have been visible.

Godbout further stated that within minutes of defendant's entering the room, he saw Bennett knock on the door of room 249 and gain admittance. Both officers testified that although they did not observe Bennett carrying a brown paper bag into the room, when he emerged shortly thereafter, he was carrying a brown paper bag in his hands. Godbout stated that this was the same paper bag that defendant had earlier carried into the room; on cross-examination, however, he was unable to say exactly how he was able to identify the bag.

When Bennett emerged, the surveillance team converged upon him, and he thereupon dropped the bag. Godbout testified that Bennett had told him the bag contained two pounds of marijuana. However, Godbout's testimony concerning the chain of custody of the bag conflicted with his testimony at defendant's 1977 indictment. A state toxicologist subsequently testified that he had analyzed the contents of a paper bag filled with eight ounces of a substance which he identified as marijuana.

After arresting Bennett, members of the surveillance team entered room 249 and arrested defendant and two other men. A subsequent search of the room revealed many personal items, including one suitcase filled with groceries. No marijuana or brown paper bag was found in the room. Although the building's windows are now movable, Godbout testified that in 1977 they were opaque and fixed. The final prosecution witness was a former desk clerk at the Carlton House Motor Inn who testified that she registered defendant to room 140.

On appeal defendant raises four issues: (1) the denial of his motion for judgment of acquittal; (2) the denial of his motion for a new trial; (3) the trial justice's ruling that defendant could not introduce evidence of the post-arrest flight of certain codefendants; and (4) the denial of his speedy-trial motions.

I

Although defendant submits several issues for review, the only one we need con-

1. The state also appealed the motion as it applied to codefendant Frederick Porter. Although these cases were to be heard together, Porter's counsel was not notified of the argument, and the case was reassigned. On December 11, 1981, we reversed the motion as it applied to Porter. *State v. Porter,* R.I., 437 A.2d 1368 (1981). The state subsequently dismissed the charges against Porter.

2. The trial began on June 14, 1982, but a mistrial was declared the next day. The defendant was reassigned for trial on June 21, 1982. The defendant filed speedy-trial motions before each trial. Such motions were also filed subsequent to his August 3, 1979 indictment.

sider is the denial of defendant's motion for judgment of acquittal.

The defendant contends that the state has failed to sustain its burden of proving its case beyond a reasonable doubt, and thus the trial justice erred in refusing to grant the motion. The state, in turn, argues that the evidence and all the reasonable inferences flowing therefrom establish defendant's guilt beyond a reasonable doubt.

■ In considering a motion for judgment of acquittal, the trial justice and this court on appeal must view all the evidence in a light most favorable to the state and draw all reasonable inferences therefrom consistent with defendant's guilt, without assessing the credibility of the witnesses or the weight of the evidence. *State v. Gazerro,* R.I., 420 A.2d 816, 827 (1980); *State v. Sundel,* 121 R.I. 638, 644–45, 402 A.2d 585, 589 (1979); *State v. Roddy,* R.I., 401 A.2d 23, 32 (1979). If the evidence, when viewed in this manner, fails to establish guilt beyond a reasonable doubt, the motion must be granted. *State v. Austin,* R.I., 462 A.2d 359, 364–65 (1983); *State v. DeGregory,* 113 R.I. 434, 436, 322 A.2d 52, 53 (1974).

In order to meet its burden of proof, the state had to prove unlawful delivery of a controlled substance, in this case, marijuana. Because possession of a controlled substance is a lesser-included offense of delivery, the mental state required to prove possession must be present in order to establish the offense of delivery under § 21–28–4.-01(A). *Sharbuno v. Moran,* R.I., 429 A.2d 1294, 1296 (1981). Thus, the state must prove that defendant had not only the power and intent to control but also a general knowledge of the nature of the substance possessed. *See State v. Gilman,* 110 R.I. 207, 215, 291 A.2d 425, 430 (1972).

■ In the instant case, there is no direct evidence to show that defendant delivered or even possessed marijuana. Nevertheless, we have held that there is no distinction between direct and circumstantial evidence. *State v. Roddy,* R.I., 401 A.2d at 35. Indeed, proof of the elements of the offense "may be shown by evidence of acts, declarations or conduct of the accused from which an inference may be fairly drawn * * *." *State v. Gilman,* 110 R.I. at 216, 291 A.2d at 431. However, the state still has the burden of proving every element of the offense beyond a reasonable doubt. *State v. Roddy,* R.I. 401 A.2d at 35.

In reviewing the evidence in a light most favorable to the state and drawing all inferences consistent with defendant's guilt, we cannot say that the state has met this burden. The evidence thus viewed reveals that defendant left his room and entered room 249 carrying a rolled-up brown paper bag. Thus, the state established defendant's presence in the room from which Bennett emerged carrying a bag of marijuana.[3]

The evidence also reveals that no marijuana or brown paper bags were found in room 249. In addition, it was not possible for defendant or the other occupants of room 249 to throw away a brown paper bag without being detected. From this evidence we are asked to infer that there was no marijuana in room 249 prior to defendant's arrival, that the rolled-up paper bag that defendant carried into room 249 contained marijuana, that defendant knew the nature of the bag's contents, and that defendant delivered the bag to Bennett with knowledge of its contents.

■ The rule in this state has clearly established that an inference resting on an inference drawn from established facts may be accepted as having probative force. But when the facts from which it is drawn are susceptible of another reasonable inference, it must be rejected as being without probative force. *In re Derek,* R.I., 448 A.2d 765, 768 (1982); *Waldman v. Shipyard Marina,*

---

**3.** We have held, however, that although presence at the scene is a factor to be considered, presence in and of itself is insufficient to sustain a conviction. *State v. Gazerro,* R.I., 420 A.2d 816, 828 (1980); *State v. Gianoulos,* R.I., 404 A.2d 81, 82 (1979); *see also Hicks v. United States,* 150 U.S. 442, 449–50, 14 S.Ct. 144, 146–47, 37 L.Ed. 1137, 1140–41 (1893).

*Inc.,* 102 R.I. 366, 373–74, 230 A.2d 841, 845 (1967).

■ In the case before us, we cannot say that all of these inferences are the only reasonable inferences to be drawn from the underlying facts. The room was not registered to the defendant, and at the time of Bennett's visit to the room, there were two other people present. Thus, it would also be reasonable to infer that these individuals gave Bennett the marijuana or that Bennett was carrying the marijuana on his person when he entered the room. To say that the defendant delivered anything more than a brown paper bag to Bennett would be to base his conviction on speculation and conjecture. This we cannot do. *State v. DeGregory,* 113 R.I. at 437, 322 A.2d at 54; *State v. Fortes,* 110 R.I. 406, 409, 293 A.2d 506, 508 (1972). "A conviction in a criminal case can stand only if all the facts and circumstances necessary to establish guilt have been proved beyond a reasonable doubt." *State v. Olsen,* 113 R.I. 164, 167, 319 A.2d 27, 29 (1974). The facts and circumstances necessary to establish this defendant's guilt were not proven beyond a reasonable doubt. The state failed to meet its burden because it relied on a pyramiding of inferences that, while "reasonable," were not the only reasonable inferences that could have been drawn.

The defendant's appeal is sustained, the judgment of conviction appealed from is vacated, and the case is remanded to Superior Court with instructions to enter judgment of acquittal.