Stephanie DICKINSON

v.

Patricia KILLHEFFER.

83–126–Appeal.

Supreme Court of Rhode Island.

Aug. 22, 1985.

Lauren E. Jones, Providence, John J. Turano, Westerly, for plaintiff.

Paul F. Singer, Carolina, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment of the Superior Court ordering partition of an estate held by the plaintiff and the defendant as tenants in common. The action for partition was filed in the Superior Court pursuant to the provisions of G.L.1956 (1969 Reenactment) § 34–15–3,[1] and also requested an accounting pursuant to the provisions of G.L.1956 (1969 Reenactment) § 10–2–1. The judgment provided for partition by metes and bounds and granted a partial accounting. We affirm. The facts of the case as found by the trial justice are as follows.

In March of 1972 Dr. Howard Laskey died, leaving an estate of approximately sixty acres of land with buildings and improvements thereon located in the village of Carolina, town of Charlestown, Rhode Island (sometimes referred to as the farm). Doctor Laskey provided in his will that his two daughters, Stephanie Dickinson (Stephanie) and Patricia Killheffer (Patricia), should each receive an undivided half interest in all of his real estate as tenants in common.

The real estate in question consists of approximately ten acres of developed land containing six structures. The largest structure was a twenty-two-room residence that served as the home of Dr. Laskey and his family (main house). On this developed area were five smaller dwelling houses used as income-producing rental properties. The remaining acreage consisted of pasture and woodland. Across from the main parcel of land, a separate parcel of land known as the Sebastian lot is included in the estate. This parcel consists of approximately one acre.

The main parcel has a frontage on Route 112, a public highway, of 556 feet. It also fronts upon Old Depot Road, a public highway, for a distance of 184 feet. There are two means of ingress to the property. One is north of the main house and provides access to the main house and the rental properties; the other entrance is south of the main house and provides access to the

1. General Laws 1956 (1969 Reenactment) § 34–15–3 was in effect when this action was originally brought in 1977. The text of this statute may now be found in G.L.1956 (1984 Reenactment) § 34–15–3.

main house and to some of the back acreage. Both are private ways or driveways. Neither could be described as a road. The trial justice found that the valuation of this land, together with its improvements, was at the time of the hearing $260,000.[2] This valuation was derived from the report of a master who had previously been appointed by another justice of the Superior Court.

At the time of Dr. Laskey's death, Stephanie was a resident of the state of California where she lived with her family. Patricia was residing in one of the five rental properties on the farm with her family. Stephanie returned to Rhode Island during her father's illness and was here at the time of his death. After their father's death, Stephanie and Patricia established a joint bank account in both their names to be used to deposit rental income from the property. They reached an agreement concerning how the property should be handled pending a final disposition of their inheritance. This agreement was found by the trial justice to contain the following elements.

Patricia was to move into the main house until the parties could work out another arrangement. Patricia was also to collect the rents from and manage the rental property, applying Stephanie's share to her tax, insurance, and maintenance responsibilities, as well as to Patricia's share of the burden of caring for and supporting Robert Keith MacKaye, who was then living on the farm. Mr. MacKaye had been cared for by the Laskeys as a member of the family since Stephanie and Patricia were young children. Upon Dr. Laskey's death, Stephanie informed Mr. MacKaye's sisters that she and Patricia would allow him to remain on the farm and would continue to care for him for an indefinite period. Mr. MacKaye actually lived on the farm and was maintained and cared for by Patricia until 1976, when she arranged for Mr.

MacKaye's care to be transferred to his sisters.

Stephanie and Patricia further agreed that Patricia would retain any money in excess of the expense necessary for the upkeep and maintenance of the farm for her own personal use. Also, Stephanie contributed to the joint account a sum of approximately $22,000 to cover the payment of estate taxes and other expenses of administering Dr. Laskey's will and estate. These funds were the proceeds of a life insurance policy on Dr. Laskey of which Stephanie was the beneficiary and also included the remainder of a bank account that Stephanie and Dr. Laskey had shared as joint owners with right of survivorship. No agreement was made for repayment of this money. Stephanie returned to California and left Patricia in charge of the farm shortly after Dr. Laskey's death but visited the farm again briefly in August 1972.

In August of 1973 Stephanie arranged with Patricia to have two of the rental units vacated in order that she and her family might temporarily use the units while the main house was being prepared for her residence. She intended ultimately to reside in the main house and either take over or participate in the management of the farm. With this end in view, Stephanie and her family left their home in California and began residing in two rental units in August. Shortly thereafter, Stephanie's furniture arrived from California. At this point, Stephanie and Patricia had a misunderstanding about both the storage of the furniture and Stephanie's permanent living arrangements. As a result, at least in part, of this misunderstanding, Stephanie and her family left the farm in November of 1973 and returned to California.

Thereafter, Stephanie and Patricia corresponded "cordially" about the property until July of 1974, when Stephanie first requested by letter that the entire property be sold and the proceeds divided between

---

**2.** This finding may be an inadvertent error since the appraisal upon which it is based, the valuation given by W. Andrew Johnson, was in the amount of $279,700. This inadvertence does not affect the validity of the trial justice's ultimate determination.

the two of them. This letter also indicated that Stephanie had contacted an attorney for assistance in the matter. Patricia did not respond to the letter, and since that time Stephanie and Patricia have not communicated save through their attorneys concerning the disposition to be made of the subject property.

In April 1977 Stephanie brought suit pursuant to § 34–15–3 to bring about a sale of the property and an equitable distribution of the proceeds thereof. She also requested an accounting from Patricia pursuant to § 10–2–1. Patricia filed counterclaims seeking recovery for moneys expended and labor performed in the maintenance and improvement of the farm over a period of years. After discovery proceedings, the case was referred by a justice of the Superior Court to a master for determination of the facts and recommendations concerning the request for partition and the various claims of the parties for accounting and reimbursement. The master filed a report on December 30, 1981. This report was based upon hearings that had taken place over a period of approximately twelve days in June of 1980. The evidence before the master consisted of nearly 1,200 pages of transcribed testimony as well as numerous exhibits. After making findings of fact, the master's report concluded with the following recommendations.

"1. A sale of the *whole* premises should be the last alternative.

"2. Meantime, a sale of the acreage, including the area north and east of the church property, the 12 foot access lot and the Sebastian lot should be sought with an upset price of $50,000. as to the acreage and $12,000. as to the Sebastian lot.

"3. The parties' attorneys should forthwith proceed to sell same, and they can act as commissioners in this regard.

"4. The remainder, of at least 13 acres of land with the building and improvements, should continue to be held by the parties on the following basis:

a. as indicated previously, defendant shall be entitled to a credit of .05% [sic] of the gross rentals as a management fee until the rental units are disposed of.

b. defendant shall be charged as aforesaid with the rental value of ½ the domicile, to wit, $225 per month, from April 23, 1977 as a credit to plaintiff to time of its disposal.

c. the other net rentals are to be split between the parties.

d. the defendant will have the first option to buy the premises for the sum of $200,000. for a period of ninety (90) days from the date this report is approved.

e. the plaintiff will have a like ninety (90) day option after the expiration of said option period on the same terms.

f. if there is no sale or disposition at the end of said option periods then this improved realty should be sold and the parties to split the proceeds equally.

"5. Defendant may use her credits hereunder against any purchase price.

"6. An Accountant may be needed to submit a short report as to the sums remaining in the accounts at the several dates referred to above. If so, each party shall share equally that cost. In the alternative, the parties, through counsel, may agree or submit to the Superior Court, their joint or respective reports on these sums. Mr. Frank L. Vacca, who has familiarity with the records, should be so employed if there is a dispute as to who should do this work.

"7. A surveyor may be required to delineate the exact acreage and/or split-ups contemplated herein. This cost, too, should be borne equally by the parties. The estimates of two surveyors are in the record. The parties can choose either or agree on another, but if they cannot resolve such choice, then Mr. Kenneth W. Anthony should be designated by the Court to so serve.

"8. The fees and expenses of the Master (estimated at not less than $7,500)

plus cost of transcript should be borne equally by the parties."

Following the filing of the report, Stephanie filed a motion to adopt and accept the master's report. Patricia filed objections to the report. Thereafter, the matter came before the trial justice, and the issue was presented whether to accept or reject, in whole or in part, the report submitted by the master.

In passing upon the report, the trial justice followed the provisions of Rule 53(e)(2) of the Superior Court Rules of Civil Procedure, which provides as follows:

"*In Non-Jury Actions.* In actions to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. Within ten (10) days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6(d). The court after hearing may adopt it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions."

The trial justice applied the "clearly erroneous" standard that we most recently enunciated in *In re Derek*, R.I., 448 A.2d 765, 767 (1982). As we stated in *Derek*,

"[a] finding of fact is 'clearly erroneous' when the totality of the evidence leaves the reviewing court with a definite and firm conviction that mistake has occurred." *Id.*

The trial justice declined to hear further evidence proffered by Patricia but reviewed the entire record of evidence that had been adduced by the master and, having done so, found the master's recommendations clearly erroneous in certain respects. Consequently, the trial justice rejected the recommendations of the master in respect to both the sale of a portion of the farm and the accounting between the parties. The trial justice determined that the property was susceptible of division by

metes and bounds and, therefore, pursuant to the preference for this type of division as set forth in *Lannon v. Lannon*, 40 R.I. 60, 99 A. 819 (1917), ordered that the property be divided into two parcels, denominated "Parcel A" and "Parcel B." Pursuant to the trial justice's determination, Stephanie was to receive Parcel A, which included the rental houses, and Patricia would receive Parcel B, which included the main house. The back acreage would be divided between the two and the two parcels were found by the trial justice to be of approximately equal value.

In passing upon the accounting between the parties, the trial justice found that there had been no ouster of Stephanie by Patricia except in regard to one of the rental dwellings (house No. 4), respecting which Patricia had segregated income in a separate account after having made extensive repairs thereto. The trial justice rejected the findings of the master concerning the impracticability of the division of the real estate by metes and bounds and concerning ouster and accounting as clearly erroneous.

After a comprehensive and meticulous review of the record in support of his analysis of the master's report, the trial justice reached the following conclusions:

"In conclusion, this Court rejects, in part, as being clearly erroneous and not in conformance with the evidence, certain of the findings submitted by the Master in his report filed January 14, 1981. Unless the contrary is stated in this opinion, a finding contained in the Master's report is to be considered as adopted.

"The Court finds that:

1. A surveyor must be appointed through agreement of the parties to delineate the boundaries of the subject property, and to establish the line of division between the two parcels mandated by this court to accomplish the partitioning by metes and bounds of this property. The surveyor should submit his findings together with his diagram of the proposed division to this Court for ap-

proval within a reasonable time period. If a surveyor cannot be agreed to by the parties one will be appointed by the Court. The cost of the surveyor should be equally borne by the parties. The actual partitioning of the property is conditional upon either: (a) the granting to the necessary parcel of a variance by the Charlestown Zoning Board as to the nonconforming side yard distance or (b) action on the part of the owner of Parcel B that will bring the parcels into conformance with the zoning ordinance, to wit: removing the addition to the main house to increase the side yard distance between the parcels.

2. Once this physical division is delineated, the parties should install a well on parcel A to serve the rental properties, costs to be borne equally by the parties.

3. Defendant must account for the rental proceeds from house number four acquired between June of 1977 and the present. To this end an accountant should be hired to determine what this amount is. Plaintiff will not be allowed to take the value of this amount in additional land.

"The conclusions of this Court have been reached after a full review of the entire record and all of the facts. The Court has constantly kept in mind the exacting nature of the clearly erroneous standard, and the long and difficult history of this case. The Court has attempted, within the bounds mandated by law, to reach the most equitable result and to do justice to the parties.

"The Master's report filed January 14, 1981 is hereby accepted in part and rejected in part in accordance with the findings herein. Counsel may prepare and submit for approval an order consistent with this decision."

Both parties appealed from the judgment[3] entered by the trial justice pursuant to his written decision. In essence, both Patricia and Stephanie challenge different portions of the trial justice's conclusions as being themselves clearly erroneous. In summary, Patricia supports the division of the real estate by metes and bounds. Stephanie challenges that division as impractical. Stephanie challenges the trial justice's conclusions concerning ouster and asserts that Patricia should account for rents received as concluded by the master. Patricia challenges the conclusions of the trial justice (which were substantially similar to those of the master) denying her compensation for labor performed and expense incurred for the maintenance of the grounds and improvement of the property by plantings, installation of a driveway, and the like during the years following the death of her father.

No purpose would be served by a detailed analysis of the factual assertions of these parties. Suffice it to say that these assertions were set forth in a series of briefs and reply briefs amounting to well over 100 pages on each side.

We are of the opinion that the trial justice in this case has differed from the master not so much in the finding of underlying facts of the case as set forth in the evidentiary hearings before the master as in the inferences and conclusions that he draws from those underlying facts. The trial justice does not really disagree with the master in regard to findings based upon credibility but generally in the conclusions to be derived from those findings.

It is a well-settled rule that the findings of a trial justice will not be disturbed unless it is demonstrated that he was clearly wrong or that he has misconceived relevant evidence. *Joni Auto Rentals, Inc. v. Weir Auto Sales, Inc.*, R.I., 491 A.2d 328, 330 (1985); *Proffitt v. Ricci*, R.I., 463 A.2d 514 (1983) (and cases cited therein). More significantly, in relation to the case at bar, the same principle applies to the inferences and conclusions drawn by a trial justice in respect to ultimate issues of fact derived from the testimony and evidence. *Casey v. Casey*, R.I., 494 A.2d 80,

---

**3.** The judgment is set forth in full as appendix A to this opinion.

82 (1985); *In re Randy B.*, R.I., 486 A.2d 1071, 1073 (1985). Consequently, the inferences and conclusions drawn by the trial justice from the facts adduced at the hearing before the master are entitled to substantial deference from this court.

We have reviewed the record of evidence produced before the master as well as the findings of fact and the recommendations of the master and the written decision of the trial justice. We are convinced on the basis of this review that the inferences and conclusions drawn by the trial justice were supported by substantial evidence. Although no disposition of this real estate could achieve a perfect resolution of the conflicting claims of Stephanie and Patricia, we are of the opinion that the judgment of the Superior Court does substantial justice between the parties. Therefore, we shall not disturb this judgment. Three issues raised by the parties should be separately considered.

■ Patricia complains that the trial justice erred in refusing to hear testimony offered at the hearing before the trial justice of a witness who was not presented before the master. The trial justice refused to hear this witness on the ground that the evidence presented before the master constituted a complete record that was adequate for decision of the case. With this determination we agree. Rule 53(e)(2) provides in pertinent part that:

"The court after hearing may adopt [the master's report] or may reject it in whole or in part *or may receive further evidence* or may recommit it with instructions." (Emphasis added.)

The language of this rule would clearly make the receipt of further evidence by a trial justice discretionary. After Patricia had had an opportunity to present evidence before the master during hearings that culminated in nearly 1,200 pages of recorded testimony, no adequate reason was presented to the trial justice to take further evidence except a desire on the part of Patricia to rebut the findings and conclusions of the master. It was certainly not an abuse of discretion to refuse to hear further evidence from an expert witness under these circumstances.

■ Stephanie challenges the conclusions of the trial justice in respect to a division of this real estate by metes and bounds for a number of reasons. Among these reasons is the claim that the division of the property would create a zoning problem by virtue of the lack of distance between the main house and one of the rental units to be assigned to Stephanie. It is suggested that the twenty-nine-foot distance between the main house and this rental unit would not meet the sidelot requirements set forth in the Zoning Ordinances of the Town of Charlestown. The trial justice recognized this problem and suggested that an application for a variance should be filed.

It has also been asserted without contradiction that these buildings have been in their present location for more than thirty years and that they may well predate the enactment of the Zoning Ordinances of the Town of Charlestown. Assuming, without deciding, that the Zoning Ordinances of the Town of Charlestown would control or be relevant to this division of real estate, we believe that an application for deviation from sidelot requirements should pose no insurmountable problem. *See Viti v. Zoning Board of Review of Providence*, 92 R.I. 59, 166 A.2d 211 (1960). It may well be that a denial of a petition for a deviation under those circumstances would constitute an abuse of the zoning board's discretion.

Stephanie also challenges the trial justice's division by metes and bounds on the ground that a well cannot be located anywhere upon the acreage assigned to her. In passing upon this argument, it must be remembered that the total area to be divided is approximately sixty acres. Suffice it to say that the evidence as adduced before the master and reviewed by the trial justice falls far short of establishing that installation of a well on Stephanie's portion of the land would be either impossible or, indeed, impractical. In any event, the trial justice

will doubtless provide in the implementation of the judgment entered that pending installation of a well which meets all environmental requirements, Patricia will continue to provide water to the rental units for a reasonable period without charge. Thereafter, a reasonable charge may well be established based upon the cost of furnishing such water and the electricity needed to operate the pump. We believe that the specter of problems raised in regard to the installation of such a well is more illusory than real.

Stephanie argues further that parcel A has inadequate road frontage. She points out that this parcel under the plan of division has 250-foot frontage on Route 112 north of the church property. She asserts that 150 feet of that frontage must be allocated to satisfy the frontage requirement for the five rental dwellings (considered as a single unit). Stephanie contrasts this figure with that of parcel B which has 373 feet of frontage on Route 112 and also has 162 feet of frontage on Old Depot Road.

It is undisputed that this plan of division was based on the testimony of Patricia's appraiser, W. Andrew Johnson. Mr. Johnson recognized that parcel A had less frontage than parcel B. However, he did point out that parcel A had certain advantages respecting salability. Further, the trial justice recognized that this division related to approximately thirty acres in each parcel. It is obvious that if the back acreage is to be developed in respect to either parcel, additional access roads will be required.

It must be borne in mind that in dividing this property, complete equality in all respects cannot be achieved. However, in relying upon the expert testimony of Mr. Johnson, the trial justice was attempting to make a practicable division of a large tract of land with a number of structures thereon. It was not the obligation of the trial justice to achieve perfection. It was his obligation to achieve a practicable and reasonably equitable result. We believe that

he has accomplished such a result. In carrying out the command of *Lannon, supra*, the trial justice, acting on the basis of substantial expert testimony, sought to achieve, and did achieve, a practicable division. He was required to do no more.

In addition to the issues specifically considered in this opinion, both parties have raised numerous objections to the trial justice's determination of points in dispute between them. We have considered these objections raised by both parties and find that in no instance was the trial justice clearly wrong in either his conclusions, his inferences, or his ultimate determinations. Consequently, the objections raised were without merit.

For the reasons stated, the appeals of Stephanie and Patricia are denied and dismissed. The judgment of the Superior Court in respect to partition and accounting is hereby affirmed. The papers in the case are remanded to the Superior Court for further proceedings in implementation of the judgment.

KELLEHER, J., did not participate.

The Chief Justice participated in the oral argument and in the decision of the court, but he did not participate in the publication of the formal opinion.

### APPENDIX A

### SUPERIOR COURT

Civil Action No. 77–106

### DECREE OF PARTITION

The above entitled matter came on to be heard before Mr. Justice Cochran on March 4, 1982 upon Defendant's Objections to the Master's report. After hearing oral argument and after a full review of the record and the facts, with due consideration thereof, it is hereby

ORDERED, ADJUDGED and DECREED

1. The Master's report is rejected in part as being clearly erroneous and not in conformance with the evidence. Findings in the Master's report not inconsistent with this Court's decision are adopted.

2. A metes and bounds partition of the property is hereby ordered. To accomplish it, Alan Easterbrooks, Civil Engineer, is hereby appointed by agreement of the parties to delineate the boundaries of the subject property and to establish a line of division between the two parcels, A and B, mandated by this Court on pages 21 through 23 of its decision, attached hereto. He shall submit his findings together with his diagram of the proposed division to this Court for approval within a reasonable time period. His fees shall be borne equally by the parties.

3. Actual partition of the property is conditional upon either:

(a). the granting of a side yard distance variance by the Charlestown Zoning Board to the necessary parcel, or

(b). action on the part of the owner of parcel B that will bring the parcels into conformance with the zoning ordinance, to wit: removing the addition to the main house to increase side yard distance between the parcels.

To this end, application for a side lot line variance shall be made to the Charlestown Zoning Board as soon as possible and the results thereof reported to this Court.

4. Once physical division is delineated, the parties should install a well on parcel A to serve the rental properties, costs shall be borne equally by the parties.

5. Plaintiff shall receive parcel A and Defendant shall receive parcel B in said division, and all documents to accomplish transfer of respective interests shall be executed by the parties.

6. The Court concludes that there was no ouster, except as indicated below, of plaintiff by defendant from the property or the main house at any time and accordingly rejects the Master's findings as to ouster. Defendant need not account to plaintiff.

7. The Court finds the agreement made between the Plaintiff and Defendant upon their father's death has never terminated and remains in effect today. That agreement calls for defendant to collect the rents from and manage the rental properties applying plaintiff's share to her tax, insurance and maintenance responsibilities and to her share of the care and support of Mr. MacKaye. Plaintiff and Defendant agreed that Defendant would retain any money in excess of the farm's expenses for her own personal use. This continuing agreement obviates any of Defendant's claims for reimbursement for maintenance work done on the property and her claim for a management fee for managing the rental properties. Accordingly, Defendant's claims for reimbursement for maintenance work done and for a management fee are denied.

8. The Court accepts the Master's finding that Defendant is entitled to a three thousand dollar payment as the unpaid balance of her five thousand dollar executrix fee.

9. The Court also accepts the Master's finding that the $22,432 insurance proceeds and joint savings account with decedent contributed to the joint checking account for payment of estate taxes, was an unconditional gift to the estate with the parties intending to be "equal participants in the residual estate after all the bills had been paid."

10. The Master's finding that Plaintiff must pay her own accountant's fee is accepted by the Court.

11. The Court also denies Defendant's claim for reimbursement for the unusually large expenditure necessitated to make house number four rentable because Defendant had a duty to clear such expenditure with plaintiff prior to taking action but acted without plaintiff's consent. The Plaintiff is not entitled to an accounting for this unauthorized expense because the Defendant used her own funds to make the repairs. The decision of the Master is accepted as to Robert Saglio's claim against the estate being the sole obligation of the defendant.

12. The Court finds that Plaintiff is entitled to an accounting from Defendant as to her one-half share of the rental money received from house number four from

June, 1977 to date since Defendant deposited said sums to her own account, and said deposit constituted ouster. To this end an accountant should be hired to determine the amount, and the costs thereof to be borne equally, if the parties cannot agree on the amount.

13. The Court denies Defendant's counter claim for Plaintiff's share of the care and support of Mr. MacKaye because Plaintiff rescinded her agreement to care for him in November, 1973.

14. The Master's fee, estimated at not more than $7,500 should be borne equally by the parties.

15. No interest should be charged on any amount due from either of the parties.

ENTERED as an ORDER of this Court, the 16th day of December, 1982.

BY ORDER:

/s/ Cochran J