306 A.2d 830.

STATE *vs.* NICHOLAS PALMIGIANO.

JULY 9, 1973.

PRESENT: Roberts, C. J., Paolino, Kelleher and Doris, JJ.

ROBERTS, C. J. This is an indictment charging the defendant, Nicholas Palmigiano, with breaking and entering in the nighttime with the intent to commit larceny pursuant to G. L. 1956 (1969 Reenactment) §11-8-4. The case was tried to a justice of the Superior Court sitting with a jury, which found the defendant guilty as charged. The defendant is now prosecuting a bill of exceptions in this court.

On October 14, 1968, at approximately 11:30 p.m. the Providence police responded to an alarm at Tire King of Rhode Island, Inc. at 750 Branch Avenue. Angelo D. Lapati, president of Tire King, arrived shortly after the police, and he opened the building for them. James Cain, a Providence policeman, testified that after being let into the building, he proceeded into the storage area and saw defendant hiding above a stack of tires near the ceiling. Officer Cain instructed defendant to come down, and he did. Mr. Lapati testified that when defendant came down, he had in his hand a can with about $38 in petty change, which was normally kept near the vending machine in the office.

I.

The defendant contends, first, that his constitutional right to a speedy trial was denied. The crime with which defendant is charged occurred on October 14, 1968. The grand jury returned the present indictment on July 11, 1969, and defendant pleaded not guilty on July 14, 1969. However, defendant was not tried until May 3, 1971. He contends that the 22-month delay deprived him of his right to a speedy trial. Our court, relying on *Barker* v. *Wingo*, 407 U. S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), has held that the right to a speedy trial is a relative one, and a determination of whether that right has been violated depends on the facts of each case. *Tate* v. *Howard*, 110 R. I. 641, 296 A.2d 19 (1972). In making such a determination, we must consider the length of delay, the reason for delay, the accused's assertion of his sixth-amendment right, and the prejudice to the accused from the delay.

The length of delay in this case — 22 months — was longer than the 16-month interval in *Tate*. The defendant does not charge the state with willfully seeking to delay his trial, as occurred in *Barker*. The state asserts that the delay in the instant case was due to the backlog of cases in the Superior Court and the normal precedence that is given to more serious crimes. However, as we emphatically stated in *Tate* v. *Howard, supra,* whatever the reasons for the Superior Court backlog, they do not suspend a defendant's constitutional right to a speedy trial. An additional reason given for the delay in this case is the fact that Palmigiano was tried for two other offenses while awaiting trial on the present indictment.

The record is absent of any demand by defendant for a trial throughout the 22-month period. This case thus contrasts with *Tate* v. *Howard, supra,* where we found that Tate was "figuratively banging on the courthouse doors asking that he be heard." *Tate* v. *Howard, supra* at 656,

296 A.2d at 27. Moreover, defendant makes no assertion that he was prejudiced by the delay in his trial. Again, this situation differs from *Tate* where the delay deprived Tate of the testimony of a witness and of the benefits of certain rehabilitative programs at the Adult Correctional Institutions.

There may be situations where an accused person is denied a speedy trial even though he failed to assert his sixth-amendment right by demanding his trial. However, in the circumstances of this case where defendant, in addition to failing to assert his right, has shown no prejudice to him by the delay, we cannot conclude that he was denied his constitutional right to a speedy trial.

The defendant also contends that this indictment should be dismissed because he was not tried or bailed within six months of the indictment as mandated by G. L. 1956 (1969 Reenactment) §12-13-7.[1] To obtain relief under the provision, the defendant must request a trial. *Sevigny* v. *Langlois*, 94 R. I. 230, 234, 179 A.2d 496, 498 (1962). Since the record discloses no such request, defendant cannot invoke the aid of this section. Therefore, we reach neither the issue of whether §12-13-7 covers the crime of breaking and entering nor the issue of whether failure to comply with the section requires dismissal of the indictment.

## II.

The defendant's next contention is that the trial justice erred in denying his request for a voir dire of the jury. When Mr. Lapati was testifying about the break at Tire

---

[1]General Laws 1956 (1969 Reenactment) §12-13-7 reads as follows: "Every person who shall be indicted for any of the crimes named in §12-13-5, and shall be imprisoned under the indictment, shall be tried or bailed within six (6) months next after the time at which he shall plead to such indictment, if he demand a trial, unless it shall appear to the court that some material witness in behalf of the state has been enticed away or is prevented from attending court by some unavoidable accident."

King, the assistant Attorney General asked the following questions:

"19 Q I ask you whether or not the name Nicholas Palmigiano means anything to you?
A In what way?
20 Q Have you heard that name before?
A Yes.
21 Q Do you know anybody with that name who may be present in the courtroom?
A Yes.
22 Q Would you point him out?
A Right there.
MR. MULLIGAN: Would the record indicate he's pointing to the defendant.
23 Q And on October 14th of 1968, did you have occasion to see Mr. Palmigiano?
A Yes.
24 Q Would you tell us where, please?"

The defendant at that time requested a voir dire, which the trial justice denied. He argues that the line of questioning may have refreshed the memories of the jurors about defendant's trial for murder, which occurred the previous June.

The extent of the examination of a juror on voir dire is left to the discretion of the trial justice. *State* v. *Pella,* 101 R. I. 62, 64, 220 A.2d 226, 228 (1966); *State* v. *Greene,* 74 R. I. 437, 442, 60 A.2d 711, 714 (1948). In the instant case, defendant had conducted an individual voir dire of the jurors. In a colloquy prior to that voir dire, both defendant and the trial justice expressed concern about the knowledge any prospective juror had of defendant's previous trial on an indictment charging him with murder. Presumably, that voir dire was designed to eliminate from the jury anyone who recalled that trial. The questions of the assistant Attorney General and the testimony of Mr. Lapati in no way allude to any of the prior convictions of defendant. By asking Mr. Lapati if he had ever heard of Nicholas Palmigiano, the prosecutor was merely seeking to

identify defendant as the person Mr. Lapati saw in his building on the night of the break-in. The mention of defendant's name probably occurred frequently during the course of the trial, and if defendant or his name was recognizable to any of the jurors, he had ample opportunity to discover that fact during the individual voir dire prior to the commencement of the trial. In these circumstances, defendant has failed to demonstrate that the trial justice abused his discretion in denying the request for a voir dire made in the middle of the trial.

### III.

The defendant argues that the trial justice erred in overruling his objection that the prosecutor had posed a leading question to Mr. Lapati.[2] The question neither suggested the specific tenor of the desired reply nor contemplated a response that would be given irrespective of actual memory. Moreover, the question was not framed so as to invite a "yes" or "no" answer. As such, the question was not leading. *State v. Mancini,* 108 R. I. 261, 267-68, 274 A.2d 742, 745 (1971); *Urbani v. Razza,* 103 R. I. 445, 448, 238 A.2d 383, 385 (1968).

### IV.

The defendant's next contention asserts that a portion of an answer by Officer Cain should have been stricken as unresponsive. The question and answer thereto were:

"10 Q And what did you notice in trying the doors and windows?

A One overhead door could be raised some — well, it's hard to say how much but one corner looked to be high enough so a man could

---

[2]The question objected to and the answer were as follows:

"33 Q And your tires are stacked—how would your tires be stacked in that area, please?

\* \* \*

A The tires are racked three tiers high against the wall. The steampipes run in front of the racks, and the tires around the steampipes, below the steampipes, are stacked maybe ten, twelve high."

squeeze under. I don't know how many inches."

This question came at the point in Officer Cain's testimony when he was testifying about his arrival at the building in response to the alarm. The prosecutor asked him in what condition he found the doors and windows upon his arrival. Officer Cain replied that one overhead door could be partly raised, and he estimated the extent to which it could be opened. In our opinion, his answer was responsive to the question asked about what he noticed in testing the security of the building's doors and windows.

## V.[3]

The defendant's final contention is that the trial justice erred in denying his motion for a new trial. He argues that the state failed to prove beyond a reasonable doubt that there had been an actual break into Tire King and that that break had been in the nighttime. Generally, to prevail on his contention, the defendant must show that the trial justice was clearly wrong or that in reviewing the evidence he overlooked or misconceived relevant and material evidence relating to a controlling issue. *State* v. *Wiggin*, 106 R. I. 69, 73, 256 A.2d 219, 221 (1969); *State* v. *Shilo*, 101 R. I. 533, 535, 225 A.2d 524, 526 (1967).

---

[3]No transcript of the trial justice's decision on the motion for a new trial was filed with the record in this case. In this case, defendant represented himself *pro se ipso* and he also moved to proceed *in forma pauperis*, which motion was granted. Apparently, however, in requesting a trial transcript, he failed to include a request for the transcript of the decision on the motion for a new trial. Nevertheless, in his bill of exceptions, he took exception to the court's denial of this motion. The trial justice disallowed this exception because no transcript was provided. It is the responsibility and obligation of an appellant or of a defendant who prosecutes a bill of exceptions to provide this court with a complete record. However, in the circumstances of this case where defendant, representing himself, was undoubtedly unaware of his oversight, we, in the interests of fairness and justice, have decided to consider his exception. Our clerk's office obtained for us the transcript of the trial justice's decision so that we could properly consider this issue.

■ Unfortunately, in this case the trial justice's decision on the motion for a new trial is too brief to determine if he overlooked or misconceived any material evidence on the issue of whether there was a break in the nighttime. In such circumstances, our duty is to examine the record independently to determine whether the evidence is sufficient to support the verdict. *State* v. *Contreras*, 105 R. I. 523, 531, 253 A.2d 612, 617 (1969); *State* v. *Frageorgia*, 84 R. I. 30, 33-34, 121 A.2d 321, 322 (1956). "[I]n testing sufficiency we must accept as truthful all competent evidence which, if believed, would support the verdict, and then determine whether that evidence is sufficient to prove a defendant guilty beyond a reasonable doubt." *State* v. *Contreras, supra* at 531, 253 A.2d at 617.

■ In the instant case, Mr. Lapati stated that the building was all secure at 6 p.m. on the evening of October 14. Officer Cain recounted that Ace Alarm sent him to 750 Branch Avenue at approximately 11:30 p.m. that evening. Upon arrival at Tire King, the officer said that the overhead door could be opened. Moreover, both Mr. Lapati and Officer Cain testified that they saw the defendant hiding among the tires in the building. In any trial, the trier of fact may draw all reasonable inferences from the evidence presented. *State* v. *Koohy*, 105 R. I. 197, 202, 250 A.2d 711, 714 (1969). The evidence that the alarm went off at about 11:30 p.m., that the overhead door could be opened, and that the defendant was found in the building shortly after the alarm went off, if believed, supports the reasonable inference that the defendant broke into Tire King in the nighttime. As such, the record of this case contains competent evidence upon which the jury could have found that the defendant committed the crime charged. Therefore, we will not disturb the verdict.

All of the defendant's exceptions are overruled; and the conviction is affirmed.

Mr. Justice Joslin did not participate.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Assistant Attorney General, *R. Raymond Greco,* Special Assistant Attorney General, for plaintiff.

*Pro Se,* for defendant.