STATE

v.

**Joseph O. BRETON.**

No. 81–514–C.A.

Supreme Court of Rhode Island.

May 6, 1983.

Dennis J. Roberts, II, Atty. Gen., Madeline Quirk, Sp. Asst. Atty. Gen., for plaintiff.

William A. Dimitri, Jr., Oleg Nikolyszyn, on brief, Providence, for defendant.

## OPINION

MURRAY, Justice.

On the evening of August 28, 1980, seven young men met in a secluded area on Neutaconkanut Hill for a party. By the end of the evening one boy lay dead, having been stabbed thirteen times, and another, stabbed twice in the back, was wounded. On November 14, 1980, a Providence County grand jury indicted the defendant, Joseph O. Breton, on one count of murder and one count of assault with intent to murder.

After a trial in Superior Court, a jury found the defendant guilty of the lesser-included offenses of manslaughter and assault with a dangerous weapon. The trial justice denied the defendant's motion for a new trial. The defendant now appeals from the judgments of conviction and from the denial of his new-trial motion. We affirm the judgments entered below.

Five young men who were present at the party testified for the state at trial. At approximately 8 p.m. on August 28, 1980, five boys headed up Neutaconkanut Hill carrying several six-packs of beer and some marijuana. Included in this group were defendant Joseph Breton (Joe), Ronald Rybka (Ron), Richard O'Brien (Rick), Scott Hanson (Scott), and Jeffrey Dzikiewicz (Jeff). They arrived at a secluded campsite, chosen because it was not visible from the nearby homes. They proceeded to build a fire and then sat around it smoking marijuana and drinking beer. Shortly thereafter, Mark Cribari (Mark) and Malcolm Yekhtikian (Mal) arrived by motorcycle, carrying vodka and orange juice. There was a great deal of drinking, and at approximately 9 p.m. Mark and Jeff left briefly to buy more beer and vodka.

All present testified that it was a friendly party and that conversation was generally light and joking. All of the boys knew one another previously except defendant and Mark, who had met for the first time that day. However, all agreed that there were no signs of animosity or hostility among the members of the group during the evening.

The boys all agreed that there were two knives at the campsite that evening. Joe's knife was used to cut an apple, and he placed it near him behind a rock. Mark's knife remained locked in its case on his belt the entire evening. It was found there after the incident.

Several of the boys testified that periodically during the evening the conversation turned to homosexuality. At one point, Jeff stated that he and Scott were lovers. He also offered to take one of the other

boys to a concert if he won tickets, but he indicated that he would expect sexual favors in return. There was some testimony that Mark stated during the evening that he liked "getting it on with guys." The boys agreed that these statements were part of the joking tenor of the evening.

At approximately 10 p.m., Mark announced that he intended to leave. Testimony differed regarding what happened next. Apparently Mark, who was standing near Joe, moved as if to unzip his pants. At that point, Joe grabbed his knife, jumped up, and the two began to struggle. The struggle was very brief and during the course of it, Joseph Breton stabbed Mark thirteen times. Joe then broke away from Mark and ran into Jeff. He stabbed Jeff twice in the back and then fled from the campsite toward Plainfield Street.

Joseph Breton testified at trial on his own behalf. He stated that all the talk about homosexuality scared him. He testified that Mark had made several statements during the evening that made him think Mark wanted to have sex with him. He further stated that just prior to the struggle he saw Mark reach for his zipper and for the knife on his belt and that he thought Mark was going to rape him. Breton reacted by reaching for his own knife because he was scared and felt that he needed to defend himself.

The defendant testified that he remembered the confrontation with Mark but did not recall striking him or stabbing him thirteen times. He also did not recall stabbing Jeff although he did remember running into someone who held him in a bear hug. He stated throughout that he was very intoxicated during the evening as he had smoked marijuana, drunk beer and vodka, and had ingested LSD or mescaline two hours prior to the party.

The trial justice charged the jury on the elements necessary to find the defendant guilty of first- or second-degree murder or manslaughter on count 1 and assault with intent to murder or assault with a dangerous weapon on count 2. He further instructed the jury that it could consider whether defendant was under the influence of drugs and alcohol to such an extent that it rendered him incapable of forming the specific intent necessary to be guilty of murder or assault with intent to murder.

The trial justice also gave an instruction on self-defense. He stated that the jury could consider whether defendant, under the circumstances presented by the evidence, reasonably believed that he was in imminent danger of death or great bodily harm at the hands of Mark Cribari or Jeff Dzikiewicz, which death or harm could only be prevented by the use of deadly force. If so, the jury could find that defendant was justified in his actions and not guilty of the offenses charged. The trial justice explained that once defendant has raised the defense of self-defense, the state must prove beyond a reasonable doubt that defendant did not act in self-defense.

The jury found defendant guilty of manslaughter and assault with a dangerous weapon. Thereafter, defendant filed a motion for a new trial, which the trial justice denied.

On appeal, defendant maintains that the trial justice erred in denying his motion for a new trial. He contends that the trial justice did not properly discharge his duty in passing on a new-trial motion because in his decision he failed to refer to and consider the evidence of self-defense. The defendant claims that this failure amounts to an oversight or misconception of material evidence. Thus, he urges this court to apply the so-called appellate rule, which entails an independent examination of the record to determine whether the evidence is sufficient to sustain the verdict. The defendant argues that the state failed to prove beyond a reasonable doubt that he did not act in self-defense and that, therefore, he is entitled to a new trial.

 We have frequently reiterated that, when ruling on a motion for a new trial, the trial justice must consider, in the exercise of his or her independent judg-

ment, in light of the charge to the jury, all of the material evidence and pass on its weight and on the credibility of the witnesses. *State v. Dionne,* R.I., 442 A.2d 876, 883 (1982); *State v. Gelinas,* R.I., 417 A.2d 1381, 1388 (1980); *State v. Barnes,* R.I., 409 A.2d 988, 992 (1979); *State v. DaRocha,* 121 R.I. 182, 185, 397 A.2d 500, 502 (1979). If the trial justice determines that the evidence adduced at trial is sufficient for the jury, as factfinders, to conclude that it proves guilt beyond a reasonable doubt, he or she must deny the motion for a new trial. *State v. McGranahan,* R.I., 415 A.2d 1298, 1302 (1980); *State v. Barnes,* 409 A.2d at 992; *State v. Edwards,* R.I., 405 A.2d 1161, 1165 (1979).

■ The burden of proving that the trial justice erred in denying a motion for a new trial is on the defendant. *State v. McGranahan,* 415 A.2d at 1302. He must persuade us that the trial justice overlooked or misconceived material evidence relating to a controlling issue, or was otherwise clearly wrong. *State v. Dionne,* 442 A.2d at 883; *State v. Palmigiano,* 111 R.I. 739, 745, 306 A.2d 830, 834 (1973).

■ In ruling on a motion for a new trial, the trial justice should articulate the facts on which the decision is based so that a reviewing court can ascertain whether he or she has overlooked or misconceived material evidence or was otherwise wrong in the decision. *State v. Benevides,* R.I., 425 A.2d 77, 81 (1981); *State v. Gelinas,* 417 A.2d at 1388; *State v. Barnes,* 409 A.2d at 992.

■ If it is unclear whether or not the trial justice has independently evaluated the evidence or if the trial justice did not indicate that he or she considered certain material evidence in rendering a decision, this court may assume that the trial justice overlooked this evidence, and it must then apply the so-called appellate rule. *State v. Barnes,* 409 A.2d at 992–93; *State v. Palmigiano,* 111 R.I. at 746, 306 A.2d at 834–35;

*State v. Contreras,* 105 R.I. 523, 531, 253 A.2d 612, 617 (1969). That rule requires us to examine the record in the light most favorable to the prosecution and to determine whether there is any competent evidence that, if believed, would support proof of guilt beyond a reasonable doubt. *State v. Barton,* R.I., 427 A.2d 1311, 1313 (1981); *State v. Barnes,* 409 A.2d at 992; *State v. Contreras,* 105 R.I. at 531, 253 A.2d at 617.

■ In the instant case, defendant argues, and we agree, that the trial justice failed to address the evidence on the issue of self-defense in his decision on defendant's motion for a new trial. Thus, we apply the appellate rule and independently review the record to determine whether there is any competent evidence to support proof beyond a reasonable doubt that defendant did not act in self-defense when he stabbed Mark Cribari and Jeff Dzikiewicz.[1] After carefully perusing the record, we think that there was ample evidence to support the verdicts in this case. We think the evidence was sufficient to support a jury's finding that defendant did not act in self-defense.

The only evidence introduced to support defendant's contention that he acted in self-defense was Joseph Breton's own testimony that he feared being raped by Mark Cribari. All of the other participants in the fateful party on Neutaconkanut Hill testified that there was no animosity or hostility among any of the boys during the evening. The defendant conceded this fact. Some of the boys remembered comments regarding sodomy and homosexuality. All agreed that they were jokes, however, and no one else recalled any sexual comments directed at defendant by either Mark or Jeff. The boys who saw Mark reach for his zipper assumed he was going to urinate. No one saw him reach for his knife. In fact, everyone, including defendant, testified that Mark's knife never left its case during the

---

1. The trial justice correctly charged the jury on the defense of self-defense and correctly instructed that once defendant has raised this defense, the burden of proof is on the state to prove beyond a reasonable doubt that defendant did not act in self-defense. *See State v. Tribble,* R.I., 428 A.2d 1079 (1981); and *State v. Caron,* R.I., 423 A.2d 823 (1980).

evening. There was also undisputed testimony that defendant was six inches taller and approximately twenty pounds heavier than Mark.

Furthermore, there was no testimony that Jeff Dzikiewicz made any gesture or comment at all to defendant before defendant stabbed him. Jeff and Scott both testified that after defendant struggled with Mark, he said, "Scott, get the other guy," and attacked Jeff.

We think this record contains sufficient competent evidence to sustain a finding that defendant did not act in self-defense when he stabbed Mark Cribari and Jeffrey Dzikiewicz. Therefore, we shall not disturb the jury's verdicts.

The defendant's appeal is denied and dismissed. The judgments of conviction are affirmed, and the papers in the case are remanded to the Superior Court.