STATE

v.

**Louis CARUOLO.**

No. 85-533-C.A.

Supreme Court of Rhode Island.

April 23, 1987.

James E. O'Neil, Atty. Gen., Annie Goldberg, Asst. Atty. Gen., for plaintiff.

John F. Cicilline, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on the defendant's appeal from a conviction of first-degree arson entered in the Superior Court after a jury trial. We affirm the conviction. The facts pertinent to the defendant's appeal are as follows.

During the course of their individual patrols on the night of January 13, 1981, two police officers met inadvertently in the parking lot behind Bill Izzi's Big Discount Market. When an exterior light on the building went out, one of the officers noted that it was nine o'clock and commented that the market had probably just closed. Three minutes later, the officers noticed flames flashing behind the window of the market's rear overhead door. While one officer drove to the front of the market and determined that the market was in fact closed and no customers or employees remained in the building, the other officer radioed a fire alarm to the police station and broke a panel in the rear overhead door in an attempt to enter the market to extinguish the flames. Responding quickly, the fire department arrived at the market five minutes after the alarm was sounded.

Despite its early discovery, the fire blazed out of control within ten minutes of its start. Noting at approximately ten o'clock that the intense heat of the rapidly spreading fire had raised the pressure within the building to such a level that a sizable crack was developing in the roof, the deputy fire chief ordered all fire personnel to evacuate the building immediately. Within forty seconds of that order, the roof collapsed in an explosion so forceful that a large chunk of cement debris was propelled 150 feet and struck a passerby, fracturing his skull. Shortly after the explosion, the deputy chief assessed the building as a total loss.

On the night of the fire, defendant, Louis Caruolo, then the market's manager, had been socializing at a local bar with cowork-

ers for approximately twenty minutes when one of the workers received word shortly before nine thirty that the market was on fire. Caruolo and the other workers immediately proceeded to the market. While viewing the fire, Caruolo discussed with the deputy chief the location of equipment, supplies, and stock within the market and agreed to meet the officers who discovered the fire later that night at the police station in order to supply information for their routine report.

Driving himself to and from the police station, Caruolo met the officers just after midnight and left twenty minutes later. During that time he signed a written statement describing activities at the market before its closing earlier that evening. In this brief account of the evening Caruolo stated that he closed and left the market at nine o'clock and did not return until he learned of the fire while at the bar. He further stated that in closing the market, he lit a propane heater used to heat the rear of the market at night, checked all the previously locked back doors, and locked the front door as he left. After describing his activities, Caruolo listed the employees who had worked with him that night, maintained that none of them had left the market before its closing, and denied that any former employee had been fired during the previous thirty days. He also stated that he did not notice anyone in the market that evening acting suspiciously and that he was not aware of any other fact of which the police should be informed.

On January 15, 1981, a police officer assigned to interview all persons who had been in the market prior to the fire asked Caruolo to return to the police station for a second statement. Again driving himself to and from the station, Caruolo was interviewed by the officer for no longer than two hours. Although the officer did not ask Caruolo to sign a written statement, he did summarize Caruolo's remarks in a routine police report written within twenty-four hours of the interview. Elaborating the information contained in Caruolo's previous statement, the report noted that before closing the market, Caruolo had not detected any signs of fire or forced entry through the previously locked back doors.

In response to a request given by a deputy fire marshal on January 19, 1981, Caruolo appeared at the division of fire safety on January 21, 1981, to give a sworn statement concerning his activities and the condition of the market on the night of the fire. The fire marshal informed Caruolo upon his arrival that the police and fire officials were viewing the fire as incendiary and that he was a suspect in their arson investigation. At that point the fire marshal advised Caruolo of his constitutional rights. Signing a written waiver of his rights and taking an oath, Caruolo participated in a two-hour interview. At the conclusion of the interview, Caruolo left the division without being detained or arrested.

At trial the state presented Caruolo's statements as evidence that he was alone briefly before closing the market at nine o'clock. In addition, the state presented (1) expert testimony to establish that the fire was not caused by an accidental event such as a defect in the propane heater or in the market's electrical system, but rather was caused by flammable liquid purposefully spread along the aisles of the market; (2) the testimony of the stock clerk who worked the night of the fire to establish that all floors had been mopped clean just before all the other employees left Caruolo alone in the market; and (3) the testimony of the police officers who discovered the fire to establish that there was no forced entry into the building after Caruolo had closed the market and before the discovery of the fire three minutes later. During the presentation of his case, Caruolo testified, denying any connection with the fire. After deliberating for four hours, the jury found Caruolo guilty of first-degree arson.

Before this court, Caruolo argues that the trial justice erred in denying a motion to suppress the two statements elicited without prior *Miranda* warnings, a motion for judgment of acquittal, and a motion for a new trial and in improperly charging the jury on a number of propositions of law.

## I

### THE MOTION TO SUPPRESS

Prior to his trial Caruolo filed a motion to suppress the statements given on the night of the fire and on January 15, arguing that both statements were inadmissible because they were made during the course of custodial police interrogation without the benefit of prior *Miranda* warnings. Finding that the police elicited the statements during routine interviews conducted as part of their general investigation of the fire at a time when Caruolo was neither a suspect nor in custody, the trial justice ruled that *Miranda* warnings were not required and the statements were thus admissible.

On appeal Caruolo argues that *Miranda* warnings were required because the police created an overwhelmingly coercive atmosphere within a setting that was custodial in nature. To support his characterization of the interviews as coercive and custodial, Caruolo further argues that the police summoned him to the police station for the purpose of asking questions that were reasonably likely to elicit incriminatory responses at a time when he was clearly the prime suspect in an established arson investigation. Caruolo's argument fails to establish that the interviews constituted custodial interrogation requiring *Miranda* protection.

Stemming from a concern that the inherently coercive atmosphere of a custodial police interrogation may have weakened a person's will and compelled an involuntary confession in violation of the Fifth Amendment, the *Miranda* exclusionary rule places all statements elicited during such interrogation beyond the state's reach at trial unless the interrogating officer apprised the person of the rights to remain silent and to be advised by counsel and afforded the person the opportunity to exercise or waive these rights. *Miranda v. Arizona*, 384 U.S. 436, 467, 476, 86 S.Ct. 1602, 1624, 1629, 16 L.Ed.2d 694, 719, 725 (1966).

■ By its own terms the rule applies only when interrogation occurs within the coercive atmosphere of police custody. *Id.*

at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 707; *see Minnesota v. Murphy*, 465 U.S. 420, 430, 104 S.Ct. 1136, 1144, 79 L.Ed.2d 409, 421 (1984) (*Miranda* warnings inapplicable to questioning in noncustodial settings); *Beckwith v. United States*, 425 U.S. 341, 346, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1, 7 (1976) (custodial nature of interrogation triggers need for *Miranda* warnings). Although a certain degree of coerciveness inheres in any police interrogation of a person suspected of a crime simply because of the aura of authority surrounding the interrogating officer, custody as contemplated by *Miranda* does not exist merely because the interrogation occurs at a police station or because the interrogated person is suspected of a crime or is the focus of a police investigation. *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977); *Beckwith*, 425 U.S. at 347, 96 S.Ct. at 1616, 48 L.Ed.2d at 8. Nor does it necessarily exist when the interrogating officer consciously seeks incriminating evidence. *Murphy*, 465 U.S. at 428, 431, 104 S.Ct. at 1142, 1144, 79 L.Ed.2d at 419, 422. Rather the decisive test for determining whether a person is in custody for purposes of receiving *Miranda* warnings is whether the person is formally arrested or whether the person's freedom of movement is restricted to the degree associated with formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3519, 77 L.Ed.2d 1275, 1279 (1983). Absent a formal arrest the determination of whether a person is subjected to restraints comparable to those associated with a formal arrest turns on how a reasonable person in the suspect's position would understand the situation. *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3152, 82 L.Ed.2d 317, 336 (1984).

■ Applying the foregoing principles to the interviews on the night of the fire and on January 15, we believe that it is clear that Caruolo was never in custody for the purposes of triggering the *Miranda* prophylactic rule. On both occasions he voluntarily drove to and from the police station without experiencing any interference with his freedom of movement. The record is

devoid of any fact that could even vaguely suggest to a reasonable person that he was not free to leave the station at any time during the course of either interview.[1] The record further establishes that at the time of the interviews the police were engaged in the initial stages of a routine investigation of a fire considered suspicious because of its (at that time) unknown origin, speed, and destructiveness. The officers' interest in interviewing Caruolo on those two occasions derived solely from the general information that he could provide as the market's manager and as the last person to observe the interior of the building prior to the fire. But even if the police at that early stage considered Caruolo a suspect, that fact would not transform, as Caruolo argues, a noncustodial setting into a custodial one.[2] Furthermore, although the reasonable likelihood of eliciting incriminatory responses is relevant to a determination that the form of questioning constitutes interrogation, *see Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297, 308 (1980) (interrogation refers to express questioning and any words or actions that police should know are reasonably likely to elicit incriminatory responses), the likelihood of incrimination would not transform, as Caruolo argues, a noncustodial setting into a custodial one.

Because the prophylactic requirements of *Miranda* are only triggered when the dual elements of interrogation and custody are both present and because Caruolo was clearly not in custody within the meaning of *Miranda*, the trial justice properly admitted statements elicited during the two interviews into evidence.

## II

### MOTION FOR JUDGMENT OF ACQUITTAL

At the close of the state's case and again at the close of his own case, Caruolo filed a motion for judgment of acquittal, arguing that the state's case was grounded solely on circumstantial evidence that merely established his presence at the market shortly before the police discovered the fire without establishing that he, rather than one of a number of people with equal access to the market that night, started the fire. Stating that he reviewed the evidence in the light most favorable to the state, the trial justice ruled that the state presented a prima facie case sufficient to support a jury conviction of first-degree arson.

■ When presented with a motion for judgment of acquittal, a trial justice must

---

1. In a supplemental brief, Caruolo argues that our recent holding in *State v. Mattatall*, 510 A.2d 947, *vacated on other grounds*, —— U.S. ——, 107 S.Ct. 265, 93 L.Ed.2d 243 (1986), supports his contention that the interviews were custodial in nature. Easily distinguishable from the instant case, *Mattatall* involved a defendant who was transported for the purpose of an investigative interview, without the option of declining, to the police station in a police van by officers acting upon the order of a detective in charge of investigating the death of a person not yet considered a homicide. Holding that the defendant had been detained in violation of the Fourth Amendment, we identified three factors for determining whether police actions unaccompanied by formal words of arrest constitute an arrest nevertheless: (1) the degree to which the person's freedom of movement is curtailed and the degree of force used by the police to effect this curtailment; (2) the possibility that a reasonable innocent person would believe that freedom of movement was curtailed; and (3) the existence of an option of refusing to go with the police. *Id.* at 951. In light of these factors, it is clear that Caruolo was not subjected to any police action associated with formal arrest or its functional equivalent.

2. In this respect Caruolo's argument is essentially identical to that of the defendant in *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), and is thus meritless. In *Mathiason* a parolee who had been named by the victim of a burglary as a possible suspect voluntarily responded to a telephone request of an investigating officer to come to the police station to "discuss something." Interrogated while retaining his freedom of movement, the parolee confessed to the burglary. Holding the confession admissible without prior *Miranda* warnings, the Court stated that *Miranda* is applicable only when the interrogating officer restricts the interrogated person's freedom of movement thereby creating a custodial setting, and that in the absence of any restriction upon the person's freedom, a police station is not a custodial setting nor is it converted into one merely because the interrogated person is suspected of a crime or is the focus of an investigation. 429 U.S. at 495, 97 S.Ct. at 714, 50 L.Ed.2d at 719.

determine whether the evidence offered by the state is capable of generating proof of guilt beyond a reasonable doubt. *State v. Gordon,* 508 A.2d 1339, 1348 (R.I.1986); *State v. Wheeler,* 496 A.2d 1382, 1389 (R.I. 1985). To make this determination, a trial justice, and this court on review, must view the evidence in the light most favorable to the state, without weighing the evidence or assessing the credibility of the witnesses, and must draw therefrom all reasonable inferences consistent with guilt. *E.g., State v. Wilshire,* 509 A.2d 444, 452 (R.I. 1986); *Gordon,* 508 A.2d at 1348; *Wheeler,* 496 A.2d at 1389.

In appealing the trial justice's denial of his acquittal motion, Caruolo argues that the state's evidence is clearly insufficient to prove guilt beyond a reasonable doubt because it is entirely circumstantial. Elaborating the argument presented to the trial justice, he asserts that the fact that he was the last person to leave the market is probative of guilt only if we accept as true the proposition that in all instances the last person known to leave a building before a fire is the person who started the fire. Because other reasonable inferences can be drawn from the fact of leaving a building immediately before a fire, Caruolo concludes that the proposition is false and hence cannot support a secondary inference of guilt beyond a reasonable doubt. Caruolo's argument misconceives the law of this jurisdiction concerning the probative force of circumstantial evidence and focuses on only one facet of the state's case while ignoring other items of evidence.

For a period of time, whenever the state rested its case solely on circumstantial evidence, this jurisdiction followed the "reasonable hypothesis" rule under which a finding of guilt could only be made if the circumstantial evidence was not only consistent with the hypothesis of guilt but also inconsistent with any reasonable hypothesis of innocence. *See State v. Jefferson,* 116 R.I. 124, 129 n. 1, 353 A.2d 190, 194 n. 1 (1976); *State v. Montella,* 88 R.I. 469, 476, 149 A.2d 919, 922–23 (1959). In a series of later cases, however, this court clearly rejected the rule and its implication that circumstantial evidence is less proba-

tive of guilt than direct evidence. The rule's dismantling began with the holding in *State v. Rose,* 112 R.I. 402, 407, 311 A.2d 281, 284 (1973), that no valid distinction exists between circumstantial and direct evidence. Then in *State v. Roddy,* 401 A.2d 23, 35 (R.I.1979), this court held that in light of *Rose,* the rule that a trial justice must, in a case resting solely on circumstantial evidence, instruct the jury that it may only render a guilty verdict if the evidence is both consistent with guilt and inconsistent with any reasonable hypothesis of innocence was no longer valid. Finally, all traces of the rule were dispelled in *State v. Romano,* 456 A.2d 746, 763 (R.I.1983), when this court clarified *Roddy* by holding that in rejecting the "reasonable hypothesis" rule as it applied to jury instructions, the court intended to reject the rule as it also applied to standards for testing the sufficiency of the state's evidence in response to relevant motions.

It is now the law of this jurisdiction that the state may rest its case entirely upon circumstantial evidence without disproving every possible speculation or inference of innocence as long as the totality of the circumstantial evidence offered constitutes proof of guilt beyond a reasonable doubt. *In re Derek,* 448 A.2d 765, 768 (R.I.1982); *State v. DaRocha,* 121 R.I. 182, 187, 397 A.2d 500, 503 (1979). Therefore, when measuring the sufficiency of the state's evidence, no distinction is to be drawn between circumstantial and direct evidence and the only standard for ruling the evidence insufficient is a reasonable doubt of guilt. *Wilshire,* 509 A.2d at 452; *Romano,* 456 A.2d at 763; *State v. Collazo,* 446 A.2d 1006, 1011 n. 4 (R.I.1982); *State v. Proulx,* 419 A.2d 835, 841 n. 4 (R.I.1980). The pivotal question in determining whether circumstantial evidence is sufficient to prove guilt beyond a reasonable doubt is whether the evidence in its entirety constitutes proof beyond a reasonable doubt or is of such a nature that it merely raises a suspicion or conjecture of guilt. Under this test, it is possible for the state to prove guilt by a process of logical deduction, reasoning from an established

circumstantial fact through a series of inferences to the ultimate conclusion of guilt. The pyramiding of inferences during this process of deduction becomes speculative, however, and thus insufficient to prove guilt beyond a reasonable doubt when the initial inference in the pyramid rests upon an ambiguous fact that is equally capable of supporting other reasonable inferences clearly inconsistent with guilt. *State v. Alexander*, 471 A.2d 216, 218 (R.I.1984); *In re Derek*, 448 A.2d at 768.

■ In light of the foregoing discussion it is clear that Caruolo's argument in support of his motion for judgment of acquittal fails. First, Caruolo's attempt to minimize the probative force of the state's evidence because it is circumstantial fails since circumstantial and direct evidence are equally probative of guilt. Second, Caruolo's suggestion that the state must prove that others with equal access to the market did not start the fire in order to prove circumstantially that he started the fire also fails since the state is not required to disprove every reasonable hypothesis of innocence as long as the totality of circumstantial evidence offered constitutes proof beyond a reasonable doubt. Finally, Caruolo's contention that the state's case is insufficient to prove guilt beyond a reasonable doubt because it rested solely upon the faulty proposition that as the last person to leave the market he must have started the fire also fails. If, as Caruolo argues, the state had attempted to infer guilt solely from that proposition, it would not have met its burden of proof because the inference of guilt would have flowed from an ambiguous fact susceptible of other reasonable inferences inconsistent with guilt. But contrary to Caruolo's characterization, the state did not rest its case solely on Caruolo's presence in the market immediately before the fire. In opposing Caruolo's motion, the state argued—and the trial justice specifically ruled—that in addition to the fact that Caruolo was the last person to leave the market, proof (1) that the fire was caused by flammable liquid purposefully spread along the market's aisles, (2) that the floors were mopped clean just before all the other employees left Caruolo alone in the market, (3) that the fire was discovered within three minutes of Caruolo's departure, and finally (4) that there were no signs of forced entry after Caruolo's departure is sufficient to establish beyond a reasonable doubt that Caruolo had started the fire. Thus, rather than deducing guilt from an ambiguous circumstantial fact, the state established a pattern of corroborating circumstances. We are of the opinion that the trial justice did not err in finding this pattern sufficient to prove guilt beyond a reasonable doubt, and accordingly we affirm the trial justice's denial of Caruolo's motion for judgment of acquittal.

III

JURY INSTRUCTIONS

Before the jury retired to consider its verdict, Caruolo raised a number of objections to the trial justice's charge. Of those objections, he now asserts three as grounds for reversal: the justice's definition of the concept "proof beyond a reasonable doubt," the justice's instruction that direct and circumstantial evidence are equally probative, and the justice's refusal to instruct that the absence of motive is a strong circumstance favoring innocence.

Caruolo argues that the trial justice erroneously defined the concept "proof beyond a reasonable doubt" by using the phrases "abiding conviction or moral certainty" and "actual doubt." We disagree.

When specific portions of a trial justice's charge are challenged, this court must examine the challenged portions within the context of the entire charge and evaluate possible interpretations from the viewpoint of a reasonable juror. *E.g., State v. Gordon*, 508 A.2d at 1349; *State v. Long*, 488 A.2d 427, 434–35 (R.I.1985); *State v. Lambert*, 463 A.2d 1333, 1338 (R.I.1983). If the charge, so examined and evaluated, mandates neither a lessening nor a shifting of the burden of proof, it will be upheld. *Gordon*, 508 A.2d at 1349; *Long*, 488 A.2d at 434; *Lambert*, 463 A.2d at 1338.

Bearing these standards in mind, we carefully reviewed the text of the trial justice's instructions. He began his charge with a clear statement that Caruolo was at that moment, as he had been throughout the trial, presumed innocent and that he could only be stripped of that presumption if the jury concluded that the state proved beyond a reasonable doubt that he was guilty of the crime as charged. He emphasized, not only then but also later when he enumerated the elements of first-degree arson, that in order to meet its burden of proof the state was required to introduce credible evidence on each element of arson. He further emphasized that the burden of proof remained on the state throughout the trial and never shifted to Caruolo, who enjoyed the presumption of innocence at all times. After instructing the jury on the state's burden of proof and Caruolo's presumption of innocence, the trial justice defined the concept "beyond reasonable doubt" as follows:

"[B]eyond reasonable doubt * * * does not mean beyond all doubt. * * * [A] reasonable doubt is a doubt that is based on evidence, or the lack of evidence. It is not a fanciful doubt. It is not just a possible doubt. It is not a speculative doubt. It must be reasonable. * * * You could say that proof beyond a reasonable doubt exists after thoroughly and conscientiously examining and considering all of the evidence in the case, your mind is left in such a condition that you feel an abiding conviction, or moral certainty, of the correctness of the state's claim that the defendant is guilty of the charge. * * * Reasonable doubt requires actual doubt which remains in your minds after fairly and impartially and thoroughly weighing the evidence and testimony you have heard in the court."

Read in the context of the entire charge, the challenged portions mandate neither a lessening nor a shifting of the state's burden of proving each element of first-degree arson beyond a reasonable doubt. As long as the phrase "abiding conviction" refers, as it did here, to the correctness of the state's claim, it is an appropriate phrase to delineate the state's heavy burden of proof. *Gordon*, 508 A.2d at 1349–50; *State v. Thorpe*, 429 A.2d 785, 789–90 (R.I.1981). As used, the phrase not only correctly requires a juror to have an "abiding conviction" of the defendant's guilt before rendering a guilty verdict but also is not susceptible of an interpretation that impermissibly requires a juror to have an "abiding conviction" of the defendant's innocence before rendering a not-guilty verdict. *Thorpe*, 429 A.2d at 790. Likewise, by clearly referring to the state's claim, the phrase cannot be interpreted as inappropriately burdening the defendant with proof of a reasonable doubt of guilt in order to retain the presumption of innocence. *Gordon*, 508 A.2d at 1350. Furthermore, equating "abiding conviction" with "moral certainty" does not constitute error, provided both terms and the charge as a whole properly apprise the jurors, as this charge did, of the correct standard of proof. *Id.; cf. Long*, 488 A.2d at 435 (no defect in reasonable-doubt instruction that included phrase "abiding conviction, or moral certainty of the state's claim"). Finally, defining a "reasonable doubt" as an "actual doubt" does not, within the context of the entire charge, lessen the state's burden of proof. Although the phrase "actual or substantial doubt" has been clearly rejected by this court as lessening the state's burden, *see State v. Ballard*, 439 A.2d 1375, 1387 (R.I.1982); *Thorpe*, 429 A.2d at 790 n. 4, the phrase "actual doubt," as used here without the offensive word "substantial," merely emphasizes in an acceptable manner previous statements establishing that a "reasonable doubt" is not a "fanciful" or "speculative" doubt. Accordingly, we are of the opinion that upon hearing the entire charge, a juror of ordinary intelligence would not have misconceived the gravity of the state's burden or looked to Caruolo to prove his innocence, and we thus conclude that the trial justice did not err in defining reasonable doubt with the challenged phrases.

Caruolo next argues that instead of instructing the jury that circumstantial and direct evidence "are" equally probative of

guilt, the trial justice should have cautioned the jury that circumstantial evidence "may be" as probative of guilt as direct evidence. We disagree.

■ As fully discussed in part II, it is the settled law of this jurisdiction that no valid distinction exists between the probative force of circumstantial and of direct evidence. Whether the evidence is circumstantial or direct, the task for the jury is "to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference." *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137–38, 99 L.Ed. 150, 166–67 (1954). Thus as long as a jury is properly instructed on the standard of reasonable doubt, an additional instruction on the probative force of circumstantial evidence is unnecessary, confusing, and incorrect. Id. at 139, 75 S.Ct. at 137, 99 L.Ed. at 166; *Roddy,* 401 A.2d at 35.

In the instant case, the trial justice contrasted circumstantial and direct evidence and stated that the two types of evidence were equally probative of guilt. Woven throughout the trial justice's discussion of evidence were statements describing the jury's role as factfinders and its power to accept or reject any item of evidence as credible and to afford the accepted evidence any weight it chose. The trial justice concluded his remarks on evidence by charging the jury that its ultimate function was to determine if the evidence that it deemed credible, whether circumstantial or direct, is sufficient, when viewed in its entirety, to establish guilt beyond a reasonable doubt. These remarks in combination with his previous statements properly defining reasonable doubt correctly stated the law on the probative force of circumstantial evidence.

Caruolo finally argues that the trial justice erred in refusing to instruct the jury that the absence of proof of motive is a strong circumstance favoring innocence. Instead of the requested instruction, the trial justice charged that proof of motive, although permitted, is not required to prove guilt and that the jury is not compelled to search for a motive during its deliberations. We find no error in the trial justice's refusal nor in his charge.

To ensure a fair trial, the trial justice must instruct the jury on the propositions of law relevant to the defendant's theory of the case, but is not required to accept proffered instructions blindly without considering their nature and relationship to the evidence presented at trial. *State v. Bowden,* 473 A.2d 275, 278 (R.I.1984). The defendant is only entitled to an instruction that explains those propositions of law that relate to the material issues of fact the evidence tends to support. *E.g., State v. Durand,* 465 A.2d 762, 766 (R.I.1983); *State v. Botelho,* 459 A.2d 947, 950 (R.I. 1983); *State v. Souza,* 456 A.2d 775, 778 (R.I.1983). Under that standard we conclude that the presence or absence of motive is not a material fact requiring the requested instruction.

■ Conviction of crime never requires proof of motive, and the absence of motive, by itself, does not raise a reasonable doubt of guilt. *State v. Bahre,* 456 A.2d 860, 868 (Me.1983); LaFave & Scott, *Criminal Law,* § 3.6(a) at 227, § 3.6(b) at 231 (2d. ed. 1986). Evidence of motive, however, may be at times probative and relevant and thus is admissible at trial provided it does not cause the jury to speculate or focus on collateral matters. *State v. Gazerro,* 420 A.2d 816, 825 (R.I.1980). If admitted under those limitations, motive is an item of circumstantial evidence that the jury may weigh in light of other facts and circumstances in evidence. Just as it is possible that a jury may properly find the presence of an overwhelming motive to be, in light of all the evidence, not probative of guilt, it is also possible that a jury may properly find the absence of any discernible motive to be, in light of all the evidence, consistent with guilt. *Bahre,* 456 A.2d at 868. The weight to be assigned to evidence or lack of evidence of motive is entirely within the province of the jury.

Because a trial justice may only comment upon evidence in an impartial manner, *State v. Fenner,* 503 A.2d 518, 525 (R.I. 1986), and because the weight of evidence relating to motive may vary depending

upon the facts and circumstances of each case, jury instructions that assign a particular weight to the presence or the absence of motive should be avoided. Within the bounds of avoiding a peremptory instruction, a trial justice may nevertheless instruct the jury that although motive is not essential to proof of guilt, its presence or absence is a circumstance that may be considered in conjunction with other evidence.[3] In restricting the trial justice to this impartial instruction, we note that counsel have ample opportunity to argue before the jury the significance of evidence or lack of evidence of motive. *See Fenner*, 503 A.2d at 525 (trial justice should not act as advocate when instructing on accomplice testimony but counsel have adequate opportunity to argue credibility of specific witnesses); *see also Bahre*, 456 A.2d at 868 (motive is proper matter not for judge's charge, but for counsel's argument before jury).

■ The proffered instruction requested the trial justice to assign a heavy weight to the lack of evidence of motive and thus was properly rejected. Because motive is not an element of the crime charged, the trial justice was not required to instruct the jury that it must consider motive. His charge that the jury need not search for motive emphasized that evidence of motive was not necessary for proof of guilt. The emphasis did not preclude the jury from considering motive, nor did it even suggest that the jury should not do so. Accordingly, we find no error in the trial justice's instructions on the absence of proof of motive.

## IV

### MOTION FOR NEW TRIAL

After the jury found Caruolo guilty of first-degree arson, he filed a motion for a new trial essentially reiterating his argument in support of his motion for judgment of acquittal. Specifically Caruolo argued that in the absence of direct evidence establishing that he started the fire and in light of his testimony denying guilt, the state's evidence is merely circumstantial and clearly insufficient to prove guilt beyond a reasonable doubt. Stating that he considered all evidence and assessed the credibility of all witnesses as if he were a thirteenth juror, the trial justice denied the motion.

■ When presented with a motion for a new trial, a trial justice must determine whether the evidence adduced at trial was sufficient to support the jury's verdict of guilt beyond a reasonable doubt. *State v. Caprio*, 477 A.2d 67, 73 (R.I.1984); *State v. Breton*, 459 A.2d 485, 488 (R.I.1983). To make this determination, a trial justice must consider all the evidence in the light of the charge given to the jury and then must independently appraise the weight of the evidence and the credibility of the witnesses. *E.g., Caprio*, 477 A.2d at 73; *State v. Tarvis*, 465 A.2d 164, 174 (R.I. 1983); *Breton*, 459 A.2d at 487–88; *State v. Romano*, 456 A.2d at 762. In effect the trial justice acts as a thirteenth juror. *State v. Jefferson*, 116 R.I. at 134, 353 A.2d at 196.

■ In reviewing a denial of a new-trial motion, this court will not disturb a trial justice's ruling unless the trial justice overlooked or misconceived material evidence relating to a critical issue or was otherwise clearly wrong. *Tarvis*, 465 A.2d at 174; *Breton*, 459 A.2d at 488; *Romano*, 456 A.2d at 762. In light of this standard for review it is crucial for the trial justice to articulate the facts upon which the ruling is based. *Tarvis*, 465 A.2d at 174; *Breton*, 459 A.2d at 488; *Romano*, 456 A.2d at 762.

In appealing the trial justice's denial of his new-trial motion, Caruolo argues that the trial justice was clearly wrong in his appraisal of both the weight of the evi-

---

**3.** We are mindful that in *State v. Cohen*, 93 R.I. 215, 219, 172 A.2d 737, 740 (1961), this court affirmed an instruction that absence of proof of motive is a strong circumstance favoring the defendant's innocence. To the extent that *Cohen* may be construed to require a trial justice to assign a weight to the absence of evidence of motive, it has been eroded by more recent cases and is no longer controlling. To the extent that *Cohen* permits a trial justice to instruct a jury that it may consider motive or lack of motive as circumstantial evidence, it is consistent with our holding today.

dence and the credibility of the witnesses. We are not persuaded by Caruolo's argument.

A review of the record reveals that the trial justice carefully applied the standards for considering a motion for new trial. In considering the evidence, he properly discounted a distinction between the probative force of circumstantial and direct evidence and then clearly enumerated those items of evidence that, when taken together, established Caruolo's guilt beyond a reasonable doubt. In assessing the witnesses, he specifically stated that he found Caruolo lacking in credibility but, on the other hand, found all of the state's witnesses highly credible. Accordingly, the trial justice ruled that the jury, drawing reasonable inferences from the testimony deemed credible, was correct in finding Caruolo guilty of first-degree arson beyond a reasonable doubt. We are of the opinion that, in so ruling, the trial justice did not overlook or misconceive any material evidence, nor was he otherwise clearly wrong. We thus affirm the trial justice's denial of Caruolo's motion for a new trial.

For the reasons stated, the defendant's appeal is denied and dismissed and the judgment of conviction is affirmed. The papers in the case may be remanded to the Superior Court.