### STATE

v.

### Alfred JIMENEZ.

No. 97–263–C.A.

Supreme Court of Rhode Island.

May 4, 1999.

694

conversion and one count of knowingly making a false statement of a crime, should not be summarily decided.

After hearing the arguments of counsel and reviewing the memoranda submitted by the parties, we are of the opinion that cause has not been shown. The issues raised in the defendant's appeal will be decided at this time.

In July 1993, the defendant, Alfred Jimenez (defendant), a Providence policeman, responded to the scene of a domestic disturbance at 286 Oxford Street in the City of Providence involving Ed Harmon (Harmon) and his girlfriend, Wendy. According to numerous witnesses present at that incident, the defendant seized a gun from Harmon's parked vehicle. However, no police report was ever filed by the defendant regarding that seizure.

On September 22, 1993, the defendant notified police headquarters claiming that he had been shot at the corner of Benedict and Brattle Streets in the west end of Providence while attempting to investigate an argument that he allegedly overheard taking place behind a vacant house.[1] When Sergeant John Kaya (Kaya) responded to the alleged shooting scene, bullet holes were visible on the defendant's uniform, just below the left shirt pocket and the pants leg, but the defendant was uninjured and the bulletproof vest he had been wearing was not damaged. The defendant then directed Kaya to the location of the gun used in the alleged shooting, which was found in an adjacent yard enclosed by a tall fence. Kaya suggested to the defendant that they dust the gun for fingerprints in order to help capture the missing assailant. In response, the defendant told Kaya that he had handled the gun at the scene, thereby indicating that his fingerprints would be found on the gun. Kaya was puzzled by that response because he had not witnessed the defendant touching the gun that was found in the

Virginia M. McGinn, Aaron L. Weisman, Providence, for Plaintiff.

Janice M. Weisfield, Paula Rosin, Providence, David N. Cicilline, Bristol, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court on April 12, 1999 pursuant to an order directing the defendant to appear and show cause why the issues raised in his appeal from a final judgment of conviction in the Superior Court, on one count of wrongful

1. The evidence is inconclusive as to whether there was a broadcast from the defendant indicating that he was hurt or whether the defendant had activated his emergency alarm.

adjacent yard and also because patrol officers are trained never to touch evidence at a crime scene in order to preserve the evidence for police detectives and the Bureau of Criminal Investigations.

After the gun was taken into custody, the identification numbers on the gun were used to link the gun seized from the alleged shooting scene to the gun seized by the defendant during the domestic disturbance incident at Oxford Street that the defendant had responded to in July, some two months earlier.[2]

After the defendant went home on the day of the shooting incident, the defendant was asked to appear at a news conference that was intended to describe the events, including the defendant's alleged heroism at the alleged shooting incident. The defendant requested to be excused from the news conference, however, because according to him, he was embarrassed about not having captured the alleged assailant. His superior officer granted the defendant's request to be absent from the news conference, but requested the defendant to turn over his uniform, including the bulletproof vest, so that it could be displayed at the news conference. The defendant responded to his superior officer's request and turned over custody of his uniform and the vest to an officer specifically dispatched to the defendant's home to pick up the clothing.

After the news conference, the defendant's uniform remained at the police station for eight days. At no time during those eight days did the defendant ever request the return of his uniform nor did he ever inquire as to the whereabouts of his uniform. After those eight days, the uniform was transported to the Rhode Island Crime Laboratory for analysis.

At trial, the defendant moved to suppress the introduction of the crime laboratory analysis of the uniform and bulletproof vest. According to the defendant, the uniform and vest had been subjected to an unlawful search and seizure because the police had failed to obtain any permission, from him or from any court, to send the uniform and vest to the Rhode Island Crime Laboratory. He contends that pursuant to our holdings in *State v. von Bulow*, 475 A.2d 995 (R.I.1984), and *State v. Eiseman*, 461 A.2d 369 (R.I.1983), the examination of the shirt, pants and vest at the Rhode Island Crime Laboratory was in effect an illegal extension of their original seizure. The trial justice denied the defendant's motion to suppress and that denial is the defendant's primary issue on appeal here.

We conclude that there was no error on the part of the trial justice in denying the defendant's motion to suppress. The defendant argues that even though the uniform lawfully came into the possession of the police, the search was performed in the absence of any lawful warrant, exigent circumstances, consent or some other justification and therefore, was unlawful. In support of his position, the defendant relies primarily on the Connecticut case of *State v. Joyce*, 229 Conn. 10, 639 A.2d 1007 (1994), *cert. denied*, — U.S. ——, 118 S.Ct. 1523, 140 L.Ed.2d 674 (1998), which held that a police officer had violated a defendant's Fourth Amendment protection against unlawful searches and seizures by having chemical tests performed on clothing that had lawfully come into the possession of the officer without first obtaining permission for the search from a court or the owner of the clothing, who was the defendant in that case. The *Joyce* court further held that despite the severely

2. The investigation of the gun's identification numbers revealed that the gun seized at the shooting scene was owned by Sherry DeFoe (DeFoe) who had given the gun to the man involved in the domestic disturbance, Ed Harmon, because Harmon said that he could sell the gun for $200. After Harmon failed to either return the gun to DeFoe or to give her any money from the sale of the gun, DeFoe asked Harmon what had happened to the gun and he responded that she could get the gun from the Providence Police, apparently referring to the defendant's seizure of the gun.

burned and damaged condition of the clothes possessed by the officer, the defendant in that case still retained a reasonable expectation of privacy in the clothes, which prevented further analysis of the clothes pursuant to the requirements of the Fourth Amendment without his consent or a lawful warrant. However, that case is factually distinguishable from the case now before us.

■ In determining whether a Fourth Amendment violation exists in this case, we employ a two-step process to determine from the record "whether a legitimate expectation of privacy sufficient to invoke Fourth Amendment protection exists." *State v. Wright,* 558 A.2d 946, 948 (R.I. 1989). First we determine whether the defendant " 'exhibited an actual (subjective) expectation of privacy' " and if that expectation is established, then we consider "whether, viewed objectively," the defendant's expectation was reasonable under the circumstances. *Id.* at 948–49. Here, the defendant voluntarily gave possession of his uniform to the police for the purpose of displaying the clothes with the bullet holes to the press and television cameras during a news conference. After the news conference was over, the defendant never requested the return of his shirt, pants and bulletproof vest nor did he inquire as to their whereabouts.

In this case, the defendant testified during the suppression hearing that he knew and clearly understood that his police uniform was going to be publicly displayed at a police department press conference. The defendant also testified that because of the condition of his uniform, with the bullet holes, that he had "no plan of ever wearing it," that it was "unserviceable," that it was "garbage" and that because he would have eventually thrown it away he had no reason for asking that the uniform be returned to him. The trial justice, on that evidence, specifically found that "[t]he shirt and pants he abandoned once they were brought down to the police station. The day after or two days after or a week

after or ten days after, he did not ask that they [the clothes] be returned to him. That coupled with his saying that they were of no use to him, I find that they were properly taken to the URI lab."

■ We are satisfied that the record demonstrates the defendant's clear intent to abandon the clothing that he left in the possession of the Providence police, thereby eliminating any reasonable expectation of privacy in the clothing and any violation of his Fourth Amendment rights that could possibly arise therefrom. *See, e.g., California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988). Moreover, the bulletproof vest that the defendant wore as part of his uniform on the day of the alleged shooting incident did not belong to the defendant, having been borrowed from another officer, so there certainly was no reasonable expectation of privacy in that article of clothing. As the trial justice specifically found, "[i]t was not his vest. He did not have in any way any proprietary interest in this vest." Accordingly, we conclude that the factual findings of the trial justice were sufficiently supported by the trial record and were not clearly erroneous.

■ The defendant's next claim of error, that the trial justice should have instructed the jury that the absence of any proof of motive on the part of the defendant could be considered in their deliberations, is without merit. In *State v. Caruolo,* 524 A.2d 575 (R.I.1987), we held that "[c]onviction of crime never requires proof of motive, and the absence of motive, by itself, does not raise a reasonable doubt of guilt." *Id.* at 584. We went on to explain that "jury instructions that assign a particular weight to the presence or the absence of motive should be avoided." *Id.* at 585. Thus, we rejected the defendant's contention in that case that the trial justice should have instructed the jury about the weight to be placed on the lack of evidence of motive. We likewise conclude that the trial justice's decision in this case not to

instruct the jury regarding the absence of proof of motive was not erroneous.[3]

The defendant raises four additional allegations of error on the part of the trial justice, none of which we conclude requires discussion. He asserts that the trial justice improperly admitted the deposition testimony of Sherry DeFoe, the owner of the gun taken from the scene of the domestic disturbance and found at the alleged shooting scene, that the trial justice erroneously admitted a diagram of the alleged shooting scene prepared by two police detectives, that the trial justice should have granted his motion for judgment of acquittal on the charge of unlawful conversion of a gun, and that the trial justice erroneously denied the defendant's motion to admit the criminal record of the man involved in the domestic disturbance, even though that man was not a witness at the trial. After due consideration, we conclude that these claims of error are all devoid of merit.

Accordingly, for all the foregoing reasons, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers in this case are remanded to the Superior Court.

**3.** It is to be noted that defense counsel, in arguing to the jury, erroneously informed them as follows: "The judge is going to tell you in his instructions, I'm sure, Mr. Youngs is going to mention it, the State is required to prove motive as an element of a crime."